1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

DANA ANDREW, as Legal Guardian of RYAN
T. PRETNER, and RYAN PRETNER,
individually,

                Plaintiffs,

    v.

CENTURY SURETY COMPANY, a foreign
corporation; and DOES 1-10, inclusive,

                Defendants.

Case No. 2:12-cv-00978-APG-PAL

**Order Denying Cross-motions for
Summary Judgment**

       The parties have filed cross-motions for summary judgment. (ECF #14 and #73). For the
reasons set forth below, the Court denies both motions.

**I.   Background and Procedural History**

       This case is a diversity action flowing from the tragic events of January 12, 2009.  On that
date, plaintiff Ryan Pretner was riding his bicycle on the eastbound shoulder of St. Rose Parkway
in Las Vegas, Nevada.[1]  At approximately 5:00 pm, Michael Vasquez ("Vasquez") was driving
his 2007 Ford F-150 pickup truck when the truck's side-view mirror struck Pretner's head,
resulting in catastrophic brain injury.  (ECF#14-1 at 9).

       At that time of the accident, Vasquez was covered under two separate insurance policies,
one issued by defendant Century Surety Company ("Century") and the other issued by

---

[1] There remains a factual dispute among the parties as to whether Mr. Pretner was lawfully riding
his bicycle on the shoulder of St. Rose Parkway, or whether he was riding on the white solid line
of the highway itself.  *Compare* Plaintiffs' Motion, (EFC#14-1 at 6), *with* Declaration of Michael
Vasquez ("Vasquez Declaration"), (ECF#25 at 2). That issue is irrelevant to the pending motions.

Progressive Insurance (not a party to the instant litigation).  The policy issued by Century was a Commercial Liability Garage Policy insuring Vasquez's business, Blue Streak Auto Detailing ("Garage Policy").  (ECF 14-2 at 2).  Blue Streak provided mobile car detailing services. (Vasquez Declaration at ¶1).  The Garage Policy provided that Century would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by any 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'"  (ECF#14-2 at 19).  Finally, the Garage Policy defined "garage operations" as "the ownership, maintenance or use of locations for garage business. . . .'Garage operations' includes the ownership, maintenance or use of the 'autos' indicated [above] as covered 'autos.'"  (*Id.* at 37).

Following the accident, Vasquez told the police that "he had just gotten off work," and that he "was on his way to his Uncle's home coming from his house."  (ECF#14-1 at 9 & 18). Shortly after the accident, Vasquez reported the claim to Progressive Insurance.  On January 13, 2009, Progressive took a recorded statement from Vasquez in which he represented that he was off work and "just going to run errands."  (ECF#23-1 at 7).  On June 12, 2009, Vasquez signed an affidavit before a notary public in which he stated that he "was driving from home…and going to [his] aunt and uncle's house…for the purpose of a visit."  (Vasquez Declaration at ¶10; ECF#25-1 at 3).  Vasquez did not notify Century about the accident until March 26, 2009, because he felt that the accident did not occur while he was driving on Blue Streak business.  (Vasquez Declaration at ¶11).  When Century's adjuster called Vasquez to discuss the accident, Vasquez apparently confirmed to the adjuster that Vasquez was not on Blue Streak business at the time of the accident.  (ECG#24-1 at 19).

On May 26, 2009, Plaintiffs made a demand upon Century to settle for its policy limits in exchange for a complete release.  (ECF#14-9).  On June 5, 2009, Century issued a letter denying coverage to Vasquez and Blue Streak because Vasquez was not driving his truck in his garage business at the time of the accident.  (ECF#14-10 at 3).  Thus, Century rejected Plaintiffs' demand.  (ECF#14-11).

1    On January 7, 2011, Plaintiffs filed in state court the underlying lawsuit entitled *Lee*

2  *Pretner and Dana Andrew as Legal Guardians of Ryan T. Pretner v. Michael Vasquez and Blue*

3  *Streak Auto Detailing, LLC*, Clark County Case No. A-11-632845-C ("Underlying Lawsuit").

4  (ECF#14-12).  In their Complaint, Plaintiffs alleged that: (1) Vasquez was an agent and/or

5  employee of Blue Streak; (2) at the time of the accident he was driving a Ford F-150 truck in the

6  course and scope of his employment with Blue Streak; and (3) Vasquez was negligent in

7  operating the truck, causing injury to Pretner.  (*Id.* at 3-5).  The Complaint also asserted claims of

8  negligent entrustment and respondeat superior against Blue Streak.  (*Id.* at 6-7).  On March 3,

9  2011, Plaintiffs' counsel forwarded a copy of the Complaint to Century.  (ECF#14-13).  On

10  March 31, 2011, Century informed Blue Streak and Vasquez that after a "complete review" of the

11  Complaint, Century was again denying coverage based on the police reports and Vasquez's

12  consistent statements that he was not operating the truck in connection with the business.

13  (ECF#14-20).

14    Blue Streak and Vasquez failed to answer the Underlying Lawsuit.  Thus, Plaintiffs

15  entered defaults against Blue Streak and Vasquez on June 27, 2011.[2]  (ECF#23-1 at 51).

16  Plaintiffs sent Century's in-house counsel and senior claims handler copies of the defaults.

17  (ECF#14-22).  The same day, Century's in-house counsel responded by e-mail, advising Plaintiffs

18  that Century's policy did not cover the loss.  (ECF#14-23).

19    On October 20, 2011, Vasquez and Blue Streak entered into a settlement agreement

20  ("Settlement Agreement") under which Progressive Insurance paid Plaintiffs the $100,000 policy

21  limit under its policy.  In addition, Plaintiffs agreed not to execute upon Vasquez and Blue Streak,

22  and Vasquez and Blue Streak assigned to Plaintiffs their rights against Century under the Garage

23  Policy.  (ECF#14-25).

24

25  _____

26  [2] The Register of Actions in the Underlying Lawsuit indicates that on June 28, 2011, Plaintiffs
    filed a request to set aside Vasquez's default.  (ECF#23-1 at 51).  The Register of Actions also
    indicates that on August 9, 2011, the court entered Notice of Entry of Defaults as to both Vasquez

27  and Blue Streak.  (*Id.*).  As discussed below, while default judgment was entered as to both
    Vasquez and Blue Streak, Century argues that the default judgment was defective because there

28  was no effective entry of default as to Vasquez.  That does not appear to be the case.

On February 16, 2012, Plaintiffs filed in the Underlying Lawsuit an application for entry of default judgment ("Application"), seeking $12,496,084.52 in damages. (ECF#14-26). The Application claimed that "[a]t the time of the accident, Vasquez was in the course and scope of his employment with Blue Streak…." (*Id.* at 3). The Application also stated that "[w]hile Pretner was riding his bicycle lawfully in the shoulder, Vasquez caused his vehicle to drift into the shoulder occupied by Pretner. The right side rear-view mirror of Vasquez's truck violently struck the back of Pretner's helmet." (*Id.*). No opposition was filed to the Application.

On April 11, 2012, the state court held a hearing on the Application. (ECF#26-2). No one appeared to oppose it. According to the Court Minutes, Plaintiffs' counsel "requested and the COURT ORDERED 40% contingency attorney fees in the amount of $5,155,396.80 and costs in the amount of $6,295.99." (*Id.*). Following the hearing, the court entered default judgment ("Default Judgment") against Vasquez and Blue Streak, finding that:

> 1. On January 12, 2009, Ryan T. Pretner was riding his bicycle traveling eastbound on the paved shoulder of St. Rose Parkway. While riding his bicycle, defendant Vasquez negligently collided with Pretner violently throwing him from his bicycle to the ground resulting in serious, catastrophic and life altering injuries.
>
> 2. At the time of the accident, Vasquez was an employee and/or agent of defendant Blue Streak Auto Detailing, LLC. At the time of the accident, Vasquez was in the course and scope of his employment and/or agency of Blue Streak acting in furtherance of its business interests. Accordingly, defendant Blue Streak is legally liable for the injuries and damages sustained by Pretner caused by defendant Vasquez's negligence.
>
> 3. As a result of the negligence of the defendants, Pretner sustained catastrophic and life altering injuries. Among the injuries Pretner sustained was a severe traumatic brain injury.
>    …

(ECF#14-27 at 5). The total amount of the Default Judgment is $18,050,185.45. (*Id.* at 6). The Default Judgment also provides that Plaintiffs are "entitled to interest as allowed under Nevada

4

law from the date of entry hereof until the judgment is fully satisfied." (*Id.*).  Plaintiffs assert that the per diem interest on the judgment is $2,596.25.  (ECF#14 at 10).

On April 23, 2012, Plaintiffs, as assignees of Blue Streak and Vasquez, filed the instant lawsuit against Century in Nevada state court ("Bad Faith Action").  (ECF#1 at 8).  Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claims practices.  On June 8, 2012, Century removed the Bad Faith Action to this Court.  (ECF#1).

On September 25, 2012, Plaintiffs filed their Motion for Summary Judgment.  (ECF#14). Meanwhile, activities were occurring in the Underlying Lawsuit in state court.  On October 17, 2012, Century filed a Motion for Leave to Intervene in that case, seeking to set aside the Default Judgment.  (ECF#26-3).  Century attached to their Motion to Intervene a proposed Complaint in Intervention.  (ECF#26-4 at 1).  In that proposed Complaint, Century alleged, among other things, that the state court:

> entered default judgment based on [] misrepresentations contained in [Plaintiffs'] Application for Default Judgment.  In particular, the default judgment repeated *verbatim*, two key factual misrepresentations:  (1) that the default was entered against Vasquez and (2) that the Accident took place while Vasquez was driving in the course and scope of his employment with blue Streak.

(Id. at 4).  On January 2, 2013, Plaintiffs filed their Opposition to Century's Motion for Leave to Intervene.  (ECF#49-2 at 1).  Plaintiffs countered that the Vasquez default was valid because, despite the fact that Plaintiffs filed a notice to set aside default as to Vasquez, the Clerk of Court rejected it because the court never signed an order to set aside default.  (*Id.* at 9).  Plaintiffs also countered that Century was bound by the court's factual findings because "'if facts are alleged which, if proven true, would give rise to the duty to indemnify, then the insurer must defend.  It is immaterial whether the claim asserted is false, fraudulent, or unprovable.  The potentiality of

covered liability is the test.'" (*Id.* at 11 (quoting *Rockwood Ins. Co. v. Federal Capital Corp.*, 694 F.Supp 772, 776 (D. Nev. 1988))).

On December 10, 2012, Century's Motion to Intervene came before the state court. (ECF#60 at 8). During the hearing, the state court considered Century's arguments that the factual findings contained in the Default Judgment were not consistent with representations Vasquez made to the police, Progressive, and Century. The court stated that:

> I think [Century] stuck their head in the sand and said, ['Hey, we] determined we're not going to have coverage here because of what we believe the facts to be. So we're going to stand back and we're not going to defend. We're not going to intervene. We're not going to seek any reservation of rights or any declaratory relief. We're just going to let the baby fall forward and hopefully we won't have any involvement. Then oops. It's going into default. I know the lawsuit says course and scope of employment. Clear as day on page 3 of the facts alleged in the complaint. But that's okay. Now they're in default.[']
>
> Just like I'm certain that Mr. Prince could guess that the insurance company was going to try and take a position of, ['you know what[?'] ['T]his wasn't course and scope.['] I would fall out of my chair if the insurance company said ['even though the lawsuit was filed alleging course and scope, even though it went into default, I never guessed they were actually assess [sic] that position when they came in for judgment and put it in the order.[']

(*Id.* at 33). Ultimately, the state court denied Century's Motion to Intervene because: (1) it was untimely filed; (2) Century knew of the pendency of the action and had an opportunity to participate, but chose not to; and (3) the entry of Default Judgment was valid. (*Id.* at 47-48). Century did not appeal the denial of its Motion to Intervene.

On May 13, 2013, Century filed its Countermotion for Summary Judgment or in the Alternative Motion for Partial Summary Judgment in the instant case. (ECF#73). The parties' cross-motions for summary judgment raise the following essential issues: (1) whether the Default Judgment's findings of fact preclude further litigation; and (2) whether the assignment upon

which the instant lawsuit is based is invalid because it was made before the entry of the Default

Judgment.

## II. Legal Standard for Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there

is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary

judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the
> burden of proof at trial, it must come forward with evidence which
> would entitle it to a directed verdict if the evidence went
> uncontroverted at trial. In such a case, the moving party has the
> initial burden of establishing the absence of a genuine issue of fact
> on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations

and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of

proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

that the nonmoving party failed to make a showing sufficient to establish an essential element of

that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477

U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be

denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The non-movant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

In the present case, Plaintiffs seek to recover damages under Century's Garage Policy, pursuant to the assignment from Vasquez and Blue Streak of their rights under that policy. In order to prevail on its motion, then, Plaintiffs must demonstrate, among other things, an absence of genuine issues of material fact regarding coverage under the Garage Policy. Plaintiffs assert that their burden is satisfied in the Default Judgment's factual findings: that Vasquez was driving in the scope of his employment with Blue Streak when he negligently caused his truck to strike Pretner, in turn causing Pretner's injuries. (ECF#14 at 12-14). Century counters that it and this Court are not bound by the Default Judgment because (1) it has no preclusive effect, and (2) the

*Rooker-Feldman* doctrine relied upon by Plaintiffs does not deprive this court of subject matter

jurisdiction over the Bad Faith Action.  (ECF#22 at 16-19).

In its Counter-motion, Century argues that summary judgment should be granted in its

favor because the Garage Policy provides no coverage.  Century relies on Vasquez's repeated

statements that he was not driving in the scope of his employment when the accident occurred.

(ECF#73 at 17).  Alternatively, Century attacks the validity of the Settlement Agreement because

it was entered into prior to the entry of the Default Judgment, thus giving rise to an impermissible

risk of collusion to increase the size of the judgment.  (*Id.* at 25).

**III. Analysis**

    **A.  Neither the Default Judgment, nor Vasquez's statements conclusively establishes the factual issues giving rise to coverage under the Garage Policy.**

The primary issues are whether the Default Judgment has preclusive effect in this lawsuit,

and whether the *Rooker-Feldman* doctrine deprives this court of subject matter jurisdiction.  The

preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined

by the Full Faith and Credit Act (28 U.S.C. § 1738), which provides that state judicial

proceedings "shall have the same full faith and credit in every court within the United States ... as

they have by law or usage in the courts of such State ... from which they are taken."  *Marrese v.*

*American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. §

1738).  On the other hand, the *Rooker-Feldman* doctrine[5] prohibits a federal district court from

exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court

judgment. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir.2003).  For the reasons discussed

below, neither issue preclusion nor the *Rooker-Feldman* doctrine prevents Century from

defending the Bad Faith Action before this Court.

---

[5] The *Rooker-Feldman* doctrine takes its name from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

**1. This Bad Faith Action is not subject to issue preclusion under Nevada law, because a default judgment based on a failure to answer does not satisfy the requirement that factual issues were actually litigated.**

"Issue preclusion is a proper basis for granting summary judgment." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 720 (Nev. 2009). Issue preclusion prevents relitigation of an issue decided in an earlier action, even though the later action is based on different causes of action and distinct circumstances. *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713–14 (Nev. 2008). As set forth above, the Full Faith and Credit Act (28 U.S.C. § 1738) provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738); *see also Noel v. Hall*, 341 F.3d 1148, 1160 (9th Cir. 2004) ("If a state court judgment is not entitled to preclusive effect under the law of that state, subsequent litigation in federal court is no more precluded by that judgment than subsequent litigation in state court."). Thus, the issue preclusive effects of a Nevada judgment must be analyzed under Nevada law. In Nevada, the elements necessary for application of issue preclusion are: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Id.* at 713 (internal quotation and citation omitted). This fourth element – "actually and necessarily litigated" – requires a final decision on the merits. *In re Sandoval*, 232 P.3d 422, 423 (Nev. 2010). The parties dispute only the operation of this fourth element: whether the facts set forth in the Default Judgment were actually litigated.

"When a default judgment is entered based on failure to answer, issue preclusion is not available because the issues raised in the initial action were never actually litigated." *Sandoval*,

232 P.3d at 424. In *Sandoval*, the United States Bankruptcy Court certified to the Nevada Supreme Court the question whether a default judgment has issue-preclusive effect. The Nevada Supreme Court considered two divergent views on the "actually litigated" element. *Id.* The court recognized that the majority of courts take a strict view, holding that issue preclusion is not available for a default judgment obtained simply on a defendant's failure to file an answer. *Id.* The court also recognized that the minority view finds that "if the party had a fair opportunity to litigate the issues and/or if the court made express findings in its default judgment, issue preclusion is appropriate." *Id.* The court expressly rejected the minority view, reasoning that the majority view best balances considerations of fairness to the party that failed to previously litigate an issue against the desire to conserve judicial resources. Thus, the court concluded that "[w]hen a default judgment is entered where an answer has not been filed, the issue presented was not actually and necessarily litigated, and issue preclusion does not apply in such circumstances." *Id.* at 425.

Plaintiffs attempt to distinguish *Sandoval*, asserting that the court "narrowly held that when a default judgment is entered based on failure to answer a complaint served by publication, the Default Judgment does not have preclusive effect." (ECF#49 at 13) (citing 232 P.3d at 422-23) (emphasis omitted). Plaintiffs seem to mistake the *Sandoval* court's recognition of the minority view for a statement of an appropriate application of issue preclusion. (ECF#49 at 14) (claiming that "…if the party had a fair opportunity to litigate the issues and/or if the court made express findings in its Default Judgment, issue preclusion is appropriate."). This misstates *Sandoval's* holding. While the court noted several facts indicating that the party against whom issue preclusion was being asserted was unaware of the prior lawsuit, the court also expressly rejected the minority view that the opportunity to litigate was a valid basis for finding the issue was actually litigated. Here, the defendants in the Underlying Lawsuit (Vasquez and Blue Streak)

failed to file an answer. (ECF#23-1). Because the Default Judgment was entered where an answer was not filed, under Nevada law the factual issues set forth in the Default Judgment are not issue preclusive. Thus, summary judgment is not available to Plaintiffs on this basis.

Similarly, Century cross-moves for summary judgment, arguing that "because the undisputed facts establish that the [Garage] Policy provided no coverage for the Accident, Plaintiffs cannot establish breach of contract as a matter of law." (ECF#73 at 16). Century relies on Vasquez's several statements that he was not driving in the scope of his employment at the time of the accident. Plaintiffs counter that Century inadequately investigated whether Vasquez was acting in the course and scope of his employment. (ECF#93 at 25). Plaintiffs contend that Century's claim handler, Charles Holland, instructed the claims investigator to ask Vasquez leading questions designed to produce answers that would provide a basis for denying coverage.[6] (ECF#93 at 27) (citing ECF#14-8). Plaintiffs emphasize that Century's in-house counsel's investigation was similarly flawed: her interview of Vasquez failed to inquire about any details regarding the nature of Vasquez's business operations that might indicate he was working at the time of the accident.[7] (*Id.* at 28-29). Instead, Plaintiffs assert, Vasquez was asked only questions narrowly designed to have him confirm that he was on a personal errand. Although this evidence is thin, at this point it is barely sufficient to establish a potential factual dispute whether Century conducted its investigation in good faith. Discovery ultimately may not produce sufficient evidence to sustain Plaintiffs' burden of proof on this point. But at this stage of the case,

---

[6] For example, in an e-mail to the investigator, Mr. Holland suggested that the investigator ask whether Vasquez was on "ANY business errand or shopping, don't ask him that but to conclude that part, 'so this was all personal, no business?' might be a good question." (ECF#14-8).

[7] Plaintiffs suggests that appropriate questions would have included inquiry regarding (1) where Vasquez kept his truck at night; (2) whether he used his truck as part of his business; (3) whether any Blue Streak marketing signs were on his truck; (4) how he marketed his business; (5) whether at the time of the accident he had a cell phone dedicated to the business; and (6) whether he received any business related calls while he was driving.

summary judgment in favor of Century must be denied to the extent Century relies only on

Vasquez's statements to "conclusively establish" he was driving in a capacity outside the scope of

Century's insurance coverage.

### 2.   The *Rooker-Feldman* doctrine is inapplicable to the instant litigation.

Plaintiffs also argue that the *Rooker-Feldman* doctrine bars this Court from hearing the

Bad Faith Action.  The *Rooker-Feldman* doctrine prohibits a federal district court from exercising

subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment.

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir.2003); *Noel*, 341 F.3d at 1160.  In part, this

prohibition arises through a negative inference from 28 U.S.C. § 1257, which grants jurisdiction

to review a state court judgment exclusively to the United States Supreme Court.  *Kougasian v.*

*TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (en banc).  That is, because § 1257 explicitly

authorizes the United States Supreme Court to hear appeals from state court judgments, it

impliedly prohibits the lower federal courts from doing so.  *Id.*  If a plaintiff brings a de facto

appeal from a state court judgment, *Rooker-Feldman* requires that the district court dismiss the

suit for lack of subject matter jurisdiction.  *Id.*  Thus, the *Rooker-Feldman* doctrine applies only

when the federal plaintiff both asserts legal error by the state court *and* seeks as its remedy relief

from the state court judgment.  *Id.* at 1140.  The Ninth Circuit has applied *Rooker-Feldman* to bar

de facto appeals from state court judgments in only seven cases.[8]

---

[8] *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir.2003) (impermissible de facto appeal
where defendant filed suit in federal court against the three appellate justices who had decided his
appeal, claiming that his federal due process right had been violated and seeking to have the
appellate court's opinion vacated and the case reassigned to a different panel); *Worldwide Church
of God v. McNair*, 805 F.2d 888 (9th Cir.1986) (impermissible de facto appeal found where
federal plaintiff sued the state superior court, alleged as a legal wrong that the state court jury
verdict was unconstitutional, and sought an injunction against the enforcement of the state court
judgment based on the verdict); *Olson Farms v. Barbosa*, 134 F.3d 933 (9th Cir.1998)
(impermissible de facto appeal where plaintiff filed suit in federal court against the members of
the Agricultural Labor Relations Board, asserting as a legal wrong the allegedly incorrect
jurisdictional determinations of the ALRB and the state courts);  *Partington v. Gedan*, 961 F.2d
852, 857 (9th Cir.1992) (impermissible de facto appeal where plaintiff named as defendants the

Here, Century attacks the validity of the Default Judgment on the basis that the factual findings "were the product of fraud and because the Default Judgment was rendered without a properly entered default." (ECF#49 at 4). Century has not named the state court or judge as a defendant, one common thread in the only cases in which the Ninth Circuit has found *Rooker-Feldman* applicable. More importantly, Century does not seek relief from the state court Default Judgment. Rather, Century argues that the Default Judgment is not issue preclusive in this case. "If a state court judgment is not entitled to preclusive effect under the law of that state, subsequent litigation in federal court is no more precluded by that judgment than subsequent litigation in state court." *Noel*, 341 F.3d at 1160. As discussed above, this Court finds that the fundamental factual issues were not actually litigated in the Underlying Lawsuit and, thus, are not entitled to issue preclusive effect in this case. Century is not seeking a de facto appeal of the Default Judgment; rather, it is simply arguing that it and this Court are not bound by the Default Judgment. Therefore, the *Rooker-Feldman* doctrine does not apply in this case, and summary judgment is not available to Plaintiffs on that basis.

**B. The timing of the assignment upon which this lawsuit is based is immaterial.**

Century also argues that Plaintiffs have no standing to bring this Bad Faith Action. Specifically, Century contends that the assignment of rights from Vasquez and Blue Streak is not

---

justices of the state supreme court, alleged "that the Hawaii Supreme Court justices ... had violated several of his constitutional rights by levying and collecting the fine," and sought a return of the $50 fine); *Allah v. Superior Court*, 871 F.2d 887, 891 (9th Cir.1989) (impermissible de facto appeal where plaintiff brought a pro se suit in federal court alleging that a dismissal by the state court violated his constitutional rights); *MacKay v. Pfeil*, 827 F.2d 540, 543 (9th Cir.1987) (impermissible de facto appeal where plaintiff sought from the federal court "a declaration that the Purported [state court] Judgment is void," and "orders restraining and enjoining the defendants from seeking to enforce the Purported Judgment.") (internal quotations omitted); and *Tofano v. Supreme Court of Nevada*, 718 F.2d 313 (9th Cir.1983) (impermissible de facto appeal where plaintiff filed suit against the state supreme court in federal court, generally challenging the procedures used to grade the bar examination and specifically challenging the decision in his individual case).

1    valid because it was made before entry of the Default Judgment, which gives rise to a risk of

2    collusion to increase the amount of the judgment.

3         Only parties with a valid contractual relationship with the insurer have standing to bring a

4    bad faith claim. *See Gunny v. Allstate Ins. Co.*, 108 Nev. 344, 830 P.2d 1335, 1335–36 (1992).

5    "When no contractual relationship exists, no recovery for bad faith is allowed." *United Fire Ins.*

6    *Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193, 197 (1989). Thus, a third-party claimant does

7    not have standing to bring a bad faith claim directly against an insurer. *Gunny*, 830 P.2d at 1335–

8    36. "An insurer is not required to resolve third-party claims unless the insurance policy names the

9    lienholder as a loss payee, the claimant is the insured, or the insured assigns the policy to the

10   lienholder." *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 317-18, 212 P.3d 318, 330 (2009).

11

12        For an assignment to be effective, it must terminate the assignor's interest in the property

13   and transfer it to the assignee. *Wilson v. Bristol W. Ins. Grp.*, 2009 WL 3105602 (D. Nev. 2009).

14   Principles of contract law govern the validity of an assignment. *Pasina ex rel. Taputu v.*

15   *California Cas. Indem. Exch.*, 2010 WL 3860646 (D. Nev. 2010). Courts examining the validity

16   of an assignment of rights in a bad faith claim under Nevada law apparently have never

17   invalidated an assignment based solely on the fact that the assignment was made before a

18   judgment. Instead, those courts determined the validity of the assignment under principles of

19   contract law. *See e.g., Hicks v. Dairyland Ins. Co.*, 2010 WL 2541175 (D. Nev. Mar. 3, 2010)

20   *aff'd*, 441 F. App'x 463 (9th Cir. 2011) (an assignment of bad faith claims entered into prior to

21   trial was invalid for lack of consideration); *Kelly v. CSE Safeguard Ins.*, Co., 2011 WL 4526769

22   (D. Nev. Sept. 27, 2011) *aff'd*, 2013 WL 3216040 (9th Cir. June 27, 2013) (an assignment of bad

23   faith claims entered into before entry of default judgment was invalid for lack of consideration).

24

25        As an initial matter, Century does not attack the validity of the assignment on any

26   principle of contract law. Instead, Century urges this Court to adopt California law which

27

28

recognizes that an assignment of a bad faith claim made before a judgment is entered is invalid. (ECF#73 at 25) (citing *Doser v. Middlesex Ins. Co.*, 162 Cal.Rptr. 115 (Cal. Ct. App. 1980); *Smith v. State Farm Mutual Ins. Co.*, 7 Cal.Rptr.2d 131 (Cal. Ct. App. 1992). Century argues that the policy rationale underlying those cases supports adopting their holdings: when a bad faith claim is assigned before a judgment is entered, the risk of collusion to increase the size of the judgment increases. (ECF#73 at 25). Plaintiff counters that the holdings in *Doser* and *Smith* were later drawn into question in *Pruyn v. Agricultural Ins. Co.*, 42 Cal.Rptr.2d 295, 308 (Cal. Ct. App. 1995). In *Pruyn*, the court rejected the holding in *Smith*, stating that it has no merit in light of the well-established rule that upon the breach by an insurer of its duty to defend, the insured may, in the absence of fraud or collusion, assign to a third party the right to bring a bad faith action against the insurer. *Id.*

The Court declines to adopt a bright-line rule that an assignment of a bad faith claim made before a judgment is entered is per se invalid. In the present case, the concerns with collusion addressed in the policy rationale underlying *Doser* and *Smith* do not appear to be present. During the hearing on Century's motion to intervene in the Underlying Lawsuit, the state court considered Century's allegations of collusion and fraud upon the court. The state court did not find those allegations persuasive. If Century is able to discover sufficient evidence to prove that the assignment was procured through fraud or collusion, it can present that evidence in this case. At present, however, the Court denies Century's Countermotion for Summary Judgment.

**C. Plaintiffs' requests that the Court disregard Century's exhibits are denied.**

Finally, Plaintiffs request that the Court not consider Vasquez's Declaration (ECF#25) because it is presented for improper purposes and because it contains legal conclusions. (ECF#49 at 5-7). Plaintiffs also suggest that the Court must disregard Century's exhibits 4, 6-9, and 22-23 because they, too, are presented for an improper purpose. (*Id.* at 7-8; ECF#93 at 10). Because the

Court has not relied on those exhibits in reaching the conclusions set forth herein, the Court

denies those requests as moot.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF#14) is

**DENIED WITHOUT PREJUDICE**, and Century's Counter-Motion for Summary Judgment

(ECF#73) is **DENIED WITHOUT PREJUDICE**.

DATED this 10th day of October, 2013.


_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE