1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

DANA ANDREW, as Legal Guardian of
RYAN T. PRETNER, and RYAN PRETNER,
individually,

Plaintiffs,

v.

CENTURY SURETY COMPANY, a foreign
corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 2:12-cv-00978-APG-PAL

**Order Granting and Denying In Part
Plaintiffs' and Defendant's Motions for
Reconsideration**

Pending before the Court are the parties' respective motions for reconsideration (ECF##
127, 132) of this Court's Order denying their cross-motions for summary judgment (ECF #123).
For the reasons discussed below, the Court grants reconsideration and enters the following Order.

**I. Background and Procedural History**

The background and procedural posture of this case are set forth in detail in this Court's
October 10, 2013 Order, and are incorporated herein by reference. The following is relevant to
the parties' cross-motions for reconsideration.

On January 12, 2009, plaintiff Ryan Pretner was riding his bicycle on the eastbound
shoulder of St. Rose Parkway in Las Vegas, Nevada.[1]  Michael Vasquez was driving his truck
when the truck's side-view mirror struck Pretner's head, resulting in a catastrophic brain injury.

At the time of the accident, Vasquez was covered under two insurance policies, one
issued by defendant Century Surety Company ("Century") and the other issued by Progressive

---

[1] There remains a factual dispute among the parties as to whether Mr. Pretner was lawfully
riding his bicycle on the shoulder of St. Rose Parkway, or whether he was riding on the white
solid line of the highway itself. *Compare* Plaintiffs' Motion, (EFC#14-1 at 6), *with* Declaration
of Michael Vasquez ("Vasquez Declaration"), (ECF#25 at 2). That issue is irrelevant to the
pending motions.

1

1    Insurance (not a party to this litigation). The Century policy insured Vasquez's business, Blue

2    Streak Auto Detailing ("Garage Policy"). (ECF#14-2 at 2). Following the accident, Vasquez told

3    the police that "he had just gotten off work," and that he "was on his way to his Uncle's home

4    coming from his house." (ECF#14-1 at 9 & 18). Shortly after the accident, Vasquez reported the

5    claim to Progressive Insurance. On January 13, 2009, Vasquez confirmed in a recorded statement

6    that he was off work and "just going to run errands." (ECF#23-1 at 7). On June 12, 2009,

7    Vasquez signed an affidavit in which he stated that he "was driving from home...and going to

8    [his] aunt and uncle's house...for the purpose of a visit." (Vasquez Declaration at ¶10; ECF#25-1

9    at 3). Vasquez did not notify Century about the accident until March 26, 2009 because he

10    believed that the accident did not occur while he was driving on Blue Streak business. (Vasquez

11    Declaration at ¶11). When Century's adjuster called Vasquez to discuss the accident, Vasquez

12    apparently confirmed to the adjuster that Vasquez was not on Blue Streak business at the time of

13    the accident. (ECG#24-1 at 19).

14       On May 26, 2009, Plaintiffs demanded that Century settle for its policy limits in exchange

15    for a complete release. (ECF#14-9). On June 5, 2009, Century denied coverage because Vasquez

16    was not driving his truck in the course of his business at the time of the accident. (ECF#14-10 at

17    3). Thus, Century rejected Plaintiffs' demand. (ECF#14-11).

18       On January 7, 2011, Plaintiffs filed in state court the underlying lawsuit entitled *Lee*

19    *Pretner and Dana Andrew as Legal Guardians of Ryan T. Pretner v. Michael Vasquez and Blue*

20    *Streak Auto Detailing, LLC*, Clark County Case No. A-11-632845-C ("Underlying Lawsuit").

21    (ECF#14-12). In their Complaint, Plaintiffs alleged that: (1) Vasquez was an agent and/or

22    employee of Blue Streak; (2) at the time of the accident he was driving his truck in the course and

23    scope of his employment with Blue Streak; and (3) Vasquez was negligent in operating the truck,

24    causing injury to Pretner. (*Id.* at 3-5). Plaintiffs' counsel forwarded a copy of the Complaint to

25    Century. (ECF#14-13). Subsequently, Century informed Blue Streak and Vasquez that after a

26    "complete review" of the Complaint, Century was again denying coverage based on the police

27

28

1    reports and Vasquez's consistent statements that he was not operating the truck in connection

2    with the business. (ECF#14-20).

3        Blue Streak and Vasquez failed to answer the Underlying Lawsuit, so defaults were

4    entered against them. (ECF#23-1 at 51). Plaintiffs sent Century copies of the defaults. (ECF#14-

5    22). Century responded that its policy did not cover the loss. (ECF#14-23).

6        On October 20, 2011, Vasquez and Blue Streak entered into a settlement agreement

7    ("Settlement Agreement") under which Progressive Insurance paid Plaintiffs the $100,000 policy

8    limit under its policy. Plaintiffs agreed not to execute upon any judgment entered against

9    Vasquez and Blue Streak, and Vasquez and Blue Streak assigned to Plaintiffs their rights against

10   Century under the Garage Policy. (ECF#14-25).

11       Plaintiffs sought entry of default judgment in the Underlying Lawsuit, requesting

12   $12,496,084.52 in damages. (ECF#14-26).  The Application claimed that "[a]t the time of the

13   accident, Vasquez was in the course and scope of his employment with Blue Streak...." (*Id*. at 3).

14   No opposition was filed to the Application, and no one appeared at the hearing to challenge it.

15   (ECF#26-2).  Following the hearing, the court entered default judgment ("Default Judgment")

16   against Vasquez and Blue Streak, finding that:

17

18       1. On January 12, 2009, Ryan T. Pretner was riding his bicycle traveling
            eastbound on the paved shoulder of St. Rose Parkway.  While riding his
19          bicycle, defendant Vasquez negligently collided with Pretner violently
            throwing him from his bicycle to the ground resulting in serious, catastrophic
20          and life altering injuries.

21       2. At the time of the accident, Vasquez was an employee and/or agent of
            defendant Blue Streak Auto Detailing, LLC.  At the time of the accident,
22          Vasquez was in the course and scope of his employment and/or agency of
            Blue Streak acting in furtherance of its business interests.  Accordingly,
23          defendant Blue Streak is legally liable for the injuries and damages sustained
24          by Pretner caused by defendant Vasquez's negligence.

25       3. As a result of the negligence of the defendants, Pretner sustained catastrophic
            and life altering injuries.  Among the injuries Pretner sustained was a severe
26          traumatic brain injury. . . . .

27

28

                                         3

1   (ECF#14-27 at 5).  According to the Court Minutes, Plaintiffs' counsel "requested and the

2   COURT ORDERED 40% contingency attorney fees in the amount of $5,155,396.80 and costs in

3   the amount of $6,295.99." (ECF#26-2).  The total amount of the Default Judgment is

4   $18,050,185.45 plus accruing interest. (*Id.* at 6).

5        On April 23, 2012, Plaintiffs, as assignees of Blue Streak and Vasquez, filed the instant

6   lawsuit against Century in Nevada state court ("Bad Faith Action"). (ECF#1 at 8).  Century

7   removed it to this Court. (ECF#1).

8        Meanwhile, Century filed a Motion for Leave to Intervene in the Underlying Lawsuit,

9   seeking to set aside the Default Judgment. (ECF#26-3).  Century argued that the Default

10  Judgment was based on misrepresentations of fact, including that the accident took place while

11  Vasquez was driving in the course and scope of his employment with Blue Streak. (ECF 26-4 at

12  4).  On December 10, 2012, the state court heard and denied Century's Motion to Intervene. The

13  court stated that:

14       I think [Century] stuck their head in the sand and said, ['Hey, we] determined
         we're not going to have coverage here because of what we believe the facts to be.
15       So we're going to stand back and we're not going to defend.  We're not going to
         intervene.  We're not going to seek any reservation of rights or any declaratory
16       relief.  We're just going to let the baby fall forward and hopefully we won't have
         any involvement.  Then oops.  It's going into default.  I know the lawsuit says
17       course and scope of employment.  Clear as day on page 3 of the facts alleged in
18       the complaint.  But that's okay.  Now they're in default.[']

19       Just like I'm certain that Mr. Prince could guess that the insurance company was
         going to try and take a position of, ['you know what[?'] ['T]his wasn't course
20       and scope.[']  I would fall out of my chair if the insurance company said ['even
21       though the lawsuit was filed alleging course and scope, even though it went into
         default, I never guessed they were actually assess [sic] that position when they
22       came in for judgment and put it in the order.[']

23

24  (ECF #60 at 33).  The state court denied Century's Motion to Intervene because (1) it was

25  untimely filed; (2) Century knew of the pendency of the action and had an opportunity to

26  participate, but chose not to; and (3) the entry of Default Judgment was valid. (*Id.* at 47-48).

27  Century did not appeal the denial of its Motion to Intervene.

28

4

1        In this Bad Faith Action, the parties filed cross-motions for Summary Judgment, which the

2   Court denied in its October 10, 2013 Order. (ECF#123.)  The Court concluded that issue

3   preclusion did not bind Century to the findings in the Underlying Lawsuit, that *Rooker-Feldman*

4   was inapplicable to this case, that the assignment in the Underlying Lawsuit was immaterial, and

5   that issues of material fact relating to Century's investigation supported denying its motion for

6   summary judgment with respect to the breach of contract and bad faith claims. (*Id.*)

7        Subsequently, Plaintiffs filed a Motion for Reconsideration or in the Alternative for

8   Certification of a Question of Law to the Nevada Supreme Court. (ECF#127.)  Plaintiffs move the

9   Court to decide whether Century breached its duty to defend, and if so, to determine the extent of

10  damages flowing from that breach, or certify the question to the Nevada Supreme Court. (*Id.* at

11  6.)  Plaintiffs also ask the Court to specifically determine whether Century is bound to the default

12  judgment in the Underlying Lawsuit. (*Id.*)

13       Century likewise filed a Motion for Clarification, or in the Alternative, Motion for

14  Reconsideration. (ECF#132.)  Century moves the Court to rule specifically on the breach of the

15  duty to defend claim, the bad faith claim, and to determine the measure of damages, if any. (*Id.* at

16  2.)

## ANALYSIS

17  **1.  Reconsideration is appropriate under Fed. R. Civ. P. 54(b).**

18

19       Rule 54(b) provides that:

20       [A]ny order or other decision, however designated, that adjudicates fewer than all
     the claims or the rights and liabilities of fewer than all the parties does not end the

21       action as to any of the claims or parties and may be revised at any time before the
     entry of judgment adjudicating all the claims and all the parties' rights and

22       liabilities.

23  Fed. R. Civ. P. 54(b).  Put more simply, "absent an express entry of final judgment, all orders of a

24  district court are 'subject to reopening at the discretion of the district judge.'" *W. Birkenfeld Trust*

25  *v. Bailey*, 837 F.Supp. 1083, 1085 (E.D. Wash. 1983) (quoting *Moses H. Cone Mem'l Hosp. v.*

26  *Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)).  After reviewing the parties' respective motions,

27  the Court concludes that reconsideration of its prior Order is warranted.

28

1    **2.     Plaintiffs' Motion for Reconsideration (ECF #127).**

2         Plaintiffs' Motion raises the following issues: (i) whether Century owed a duty to defend

3    the defendants in the Underlying Lawsuit, (ii) the measure of damages against an insurer that

4    breaches the duty to defend, and (iii) whether Century is bound by the Default Judgment.

5         **(a)     Century owed a duty to defend the defendants in the Underlying Lawsuit.**

6         Century asserts that "the existence of a duty to defend under a particular insurance policy

7    is a question of law because it involves the interpretation of a written contract." (ECF#127 at 9.)

8    That question of law begins with determining whether Nevada is a "four corners" jurisdiction—

9    that is, does the duty to defend arise solely from the allegations contained within the four corners

10   of the Complaint, or may the insurer investigate the facts underlying the Complaint in order to

11   determine whether coverage (and thus the duty to defend) exists. (ECF#127 at 2.)

12        The Nevada Supreme Court has never explicitly held that Nevada follows the "four

13   corners" rule, but it has used language that implies that it embraces the rule. In *United Nat'l Ins.*

14   *Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 687, 99 P.3d 1153, 1158 (2004), the court stated that

15   "[a] potential for coverage only exists when there is arguable or possible coverage.  Determining

16   whether an insurer owes a duty to defend is achieved by comparing the allegations of the

17   complaint with the terms of the policy." *Id.* (citing *Hecla Min. Co. v. New Hampshire Ins. Co.*,

18   811 P.2d 1083, 1089 (Colo. 1991) ("the obligation to defend arises from allegations in the

19   complaint, which if sustained, would impose a liability covered by the policy")).  Plaintiffs assert

20   that this is the four corners rule. (ECF#127 at 10.)  Century counters that *United National* did not

21   adopt the four corners rule, but rather held that "an insurer must investigate the 'facts behind a

22   complaint' before denying a defense, signifying that an insurer is not limited solely to considering

23   the allegations in a complaint in determining its duty to defend." (ECF #134 at 4 (quoting *United*

24   *National*, 99 P.3d at 1158).)  The Nevada Supreme Court's opinion is not clear:

25        The duty to defend is broader than the duty to indemnify. There is no duty to
26        defend "[w]here there is no potential for coverage." *Bidart v. Am. Title Ins. Co.*,
         103 Nev. 175, 177, 734 P.2d 732, 733 (1987).  In other words, "[a]n insurer ...
27        **bears a duty to defend its insured whenever it ascertains facts which give rise**
         **to the potential of liability under the policy.**" *Gray v. Zurich Insurance*
28

1
2
3
4
5
6

*Company*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 177 (1966). Once the duty to defend arises, "this duty continues throughout the course of the litigation." *Home Sav. Ass'n v. Aetna Cas. & Surety*, 109 Nev. 558, 565, 854 P.2d 851, 855 (1993). If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988) (interpreting California law). The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured **without at least investigating the facts behind a complaint**. *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991).

7
8
9
10

However, "the duty to defend is not absolute." *Aetna Cas. & Sur. Co.*, 838 F.2d at 350. A potential for coverage only exists when there is arguable or possible coverage. *Morton by Morton v. Safeco Ins. Co.*, 905 F.2d 1208, 1212 (9th Cir. 1990) (interpreting California law). **Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy.** *Hecla*, 811 P.2d at 1089–90.

11   120 Nev. at 686-87, 99 P.3d at 1158 (emphasis added). The second paragraph (particularly the

12   last sentence) seems to adopt the four corners rule by stating that the insurer must compare the

13   allegations in the (four corners of the) complaint with the terms of the policy. However, the first

14   paragraph says the insurer may "investigat[e] the facts behind a complaint" to ascertain whether

15   "facts [exist] which give rise to the potential of liability under the policy." *Id.*

16          The most plausible reading is that the "facts" an insurer must rely on are those alleged in

17   the complaint, rather than facts derived from an insurance company's investigation. *United*

18   *National* relied on *Hecla*, a case from Colorado, which explicitly applies the four corners rule.

19   *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (citing

20   *Hecla* and affirming that "we have long held that to determine whether a duty to defend exists,

21   courts must look no further than the four corners of the underlying complaint (the 'four corners'

22   or 'complaint' rule)"). Moreover, both *United National* and *Hecla* discuss the strong public

23   policy that the duty to defend is to be construed broadly to enforce "the insured's legitimate

24   expectation of a defense." *See Hecla*, 811 P.2d at 1090. Finally, the Nevada Supreme Court

25   decided *United National* consistently with the four corners doctrine, never looking past the

26   allegations contained in the complaint in determining whether a duty to defend existed. The

27   logical conclusion is that Nevada has adopted the four corners doctrine even though the Nevada

28   Supreme Court has yet to explicitly state that.

7

1          Several cases from this District have concluded that Nevada has adopted the four corners

2  rule. *See OneBeacon Ins. Co. v. Probuilders Specialty Ins. Co.*, 2009 WL 2407705 *8 (D. Nev.

3  Aug. 3, 2009) ("Nevada has adopted the [four corners rule] pursuant to which an insurer that

4  seeks to avoid its duty to defend its insured may only do so by comparison of the complaint in the

5  underlying litigation to the terms of the policy."); *Beazley Ins. Co. v. Am. Econ. Ins. Co.*, 2013

6  WL 2245901 *4 (D. Nev. May 21, 2013) (quoting *OneBeacon Ins.*, 2009 WL 2407705 at *8);

7  *Liberty Ins. Underwriters Inc. v. Scudier*, 2013 WL 3427902 *4 (D. Nev. July 8, 2013) (same);

8  *Discover Prop. & Cas. Ins. Co. v. Scudier*, 2013 WL 2153079 *4 (D. Nev. May 16, 2013) (same);

9          On the other hand, at least two decisions from this District have looked beyond the four

10  corners of the complaint when applying *United National*. (ECF#134 at 4 (citing *United Nat. Ins.*

11  *Co. v. Assurance Co. of Am.*, 2012 WL 1931521 *3 n.2 (D. Nev. May 29, 2012) ("The Court

12  assumes for the purpose of this order, without determining whether the Nevada Supreme Court

13  would so hold, that an insurer may go beyond the four corners of a complaint to matters of public

14  record in making its coverage/duty to defend determination."); *Gary G. Day Constr. Co., Inc. v.*

15  *Clarendon Am. Ins. Co.*, 459 F. Supp. 2d 1039, 1050 (D. Nev. 2006) (citing *United National,* 99

16  P.3d at 1158 ("The duty arises when the allegations of the complaint and the facts known to the

17  insurer indicate a potential for coverage."[2])).

18          Century contends that an exception to the four corners rule exists where the allegations in

19  the complaint are not bona fide, but rather are framed only to trigger a duty to defend under an

20  insurance policy. (ECF#22 at15 (citing *Cotter Corp. v. A.M. Empire Surplus Lines Ins. Co.*, 90

21  P.3d 814, 829 n.9 (Colo. 2004).) Century points out that on the basis of this exception, the Tenth

22  Circuit approved an insurer's reliance on extrinsic evidence in rejecting a defense. *Pompa v. Am.*

23  *Family Mut. Ins. Co*., 520 F.3d 1139, 1146 (10th Cir. 2008). However, in *Pompa* the court held

24  that reliance on extrinsic evidence was appropriate where the insurer first provided a defense and

25  then later sought to recover defense costs from the insured. *Id.* Here, Century failed to first

26

27       [2] However, in *Day Construction* the court never applied its statement of the rule because both
parties failed to "submit[] argument or evidence demonstrating a duty to defend." 459 F. Supp. 2d at 1050.

28

1   provide a defense, and unlike the insurance carrier in *Pompa*, Century is not relying on extrinsic

2   evidence to seek recovery of the costs of defending its insured. Thus, Century's proffered

3   exception to the four corners rule is inapplicable here.

4        The Court concludes that the Nevada Supreme Court would adopt the four corners rule.

5   Thus, an insurance company's duty to defend is determined "by comparing the allegations of the

6   complaint with the terms of the policy." *United National*, 99 P.3d at 1158.

7        Here, the complaint in the Underlying Lawsuit alleged, among other things, that Vasquez

8   was driving in the course and scope of his employment with Blue Streak when he negligently hit

9   Pretner, causing him catastrophic injuries. (*See generally* ECF#14-12.) Century's Garage Policy

10  included coverage for such an event. At the time of the accident, Vasquez's truck was covered

11  under the policy. Comparing the allegations contained in the complaint with the Garage Policy, it

12  appears there was at least a potential for coverage under the policy. Accordingly, Century

13  breached its duty to defend.[3]

14

15       **(b)    Century is not bound by the Default Judgment by operation of law.**

16       Plaintiffs urge this Court to apply a line of Nevada cases arising in the uninsured motorist

17  context to hold that Century is bound by the findings in the Default Judgment in the Underlying

18
    Lawsuit. (ECF#127 at 17.) Century counters that the holding and rationale in those cases are
19
    limited to the uninsured motorist context. (ECF#157 at 2.) For the reasons discussed below, the
20
21  Court agrees with Century.

22       The Nevada Supreme Court has held that where an insurer has notice of an adversarial

23  proceeding that implicates uninsured motorist coverage under its policy but refuses to intervene,

24  the insurer will be bound by the judgment thereafter obtained. *Allstate Ins. Co. v. Pietrosh*, 85

25

26

27       [3] If Century's investigation led it to believe that Vasquez was not driving within the course and
    scope of his employment with Blue Streak, it could have provided a defense, reserved its rights, and filed a
28  motion for summary judgment in the early stages of the Underlying Lawsuit to resolve that issue up front.

Nev. 310, 316, 454 P.2d 106, 111 (1969). This is true notwithstanding the fact that it subverts the element of privity normally required for the application of the principles of claim and issue preclusion. *Id.*

The insurance policy at issue in *Pietrosh* included a provision stating that any judgment obtained by its insured against an uninsured motorist would not be binding upon the insurance company. 454 P.2d at 110. The insurance company received notice of litigation by its insured against an uninsured motorist, but did not intervene, seek arbitration, or consent to the suit. *Id.* The court emphasized that insurance policies are not ordinary contracts but rather are "complex instrument[s], unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not." *Id.* (citation omitted.) Because of this, the court would "not hesitate to place the burden of affirmative action upon the insurance company...." *Id.* The court concluded that it was unreasonable for the insurer to do nothing, and held that where an insurer has notice of litigation that may give rise to coverage under its policy and fails to intervene, it will be bound by the judgment thereafter obtained against the uninsured motorist. *Id.* at 110-11.

The court noted that its holding "subvert[ed] the requirement of privity normally present with the application of [principles of claim and issue preclusion]. Privity is absent here." *Id.* at 111. The court reasoned that the public policy favoring intervention and "avoiding multiple litigation carries . . . greater weight" than the policy requiring privity for application of preclusion in the insurance context. *Id.* The Nevada Supreme Court has not applied *Pietrosh* in any context other than uninsured motorist litigation.

In *Christensen*, the Nevada Supreme Court applied the holding and rationale of *Pietrosh* to bind a non-intervening insurer to a finding of liability in a default judgment entered against an uninsured motorist. 88 Nev. 160, 494 P.2d 552. Christensen was injured in a collision with an

10

uninsured motorist. She sued the uninsured motorist, notified her insurer, and the insurer elected not to intervene. After obtaining default judgment against the uninsured motorist, Christensen sued her insurance carrier. The court held that the insurance carrier was bound by the default judgment. The court noted that the effect of *Pietrosh* was "to impliedly pronounce the insurer as an indirect party," and then extended that notion to the context of a default judgment. *Id.* at 553. Like *Pietrosh*, the Nevada Supreme Court has never applied *Christensen* outside of the uninsured motorist context.

In *Lomastro*, Lomastro died while driving Leach's car. 195 P.3d at 342. Leach was uninsured. Lomastro's insurance carrier denied Lomastro's parents' uninsured motorist claim. Lomastro's parents sued Leach claiming negligent entrustment, and notified their insurance carrier of the action. Leach did not answer the complaint. Before seeking entry of default, the Lomastros notified their insurance carrier that they intended to do so. After entering default against Leach, the Lomastros once again notified their insurance carrier of this development. Finally, after receiving notice of a hearing for entry of default judgment, the Lomastros' insurance carrier moved to intervene.

The trial court allowed intervention, but held that the entry of default precluded the insurance carrier from contesting Leach's liability. The Lomastros then amended their complaint to assert causes of action against the insurance carrier, including breach of the implied covenant of good faith and fair dealing. The insurance carrier moved for summary judgment on the basis that uninsured motorist coverage does not apply to single-vehicle accidents. The trial court granted the motion for summary judgment, and cross-appeals followed.

Citing both *Pietrosh* and *Christensen*, the Nevada Supreme Court reversed the lower court's grant of summary judgment and held that uninsured motorist coverage does apply to single-vehicle accidents. 195 P.3d at 351. However, the court affirmed the lower court's conclusion that entry of default against Leach was sufficient to bind the insurer. *Id.* at 344-45.

1    The court noted that "entry of default acts as an admission by the defending party of all material

2    claims made in the complaint." *Id.* Entry of default, therefore, generally resolves the issues of

3    liability and causation and leaves open only the extent of damages."[4] *Id.* at 345. The court relied

4    on the holdings in *Pietrosh* and *Christensen* that the lack of privity normally required for

5    application of preclusion would be ignored in the context of uninsured motorist claims. *Id.*

6    Similarly to *Pietrosh* and *Christensen*, *Lomastro* has never been applied in the general liability

7    insurance context.

8        The *Pietrosh*, *Christensen*, and *Lomastro* line of cases is best limited to the context of

9    uninsured motorist claims. The Nevada Supreme Court has never applied them in the general

10   liability context, as Plaintiffs ask this Court to do. The fact that they have not been expanded to

11   that context is not surprising, given the court's explicit exemption of only the privity element of

12   preclusion. Privity between parties "designat[es] a person so identified in interest with a party to

13   former litigation that he represents precisely the same right in respect to the subject matter

14   involved." *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997);

15   *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) (quoting

16   same).[5] Rather than require an insured to bear the burden of proving privity between the insurer

17   and the uninsured motorist (which likely would be impossible), the Nevada Supreme Court opted

18   for subverting the requirement all together. *Pietrosh*, 454 P.2d at 111. As Century persuasively

19   argues, "the reason insurance companies were bound by the judgments in the *Pietrosh* line of

20

21       [4] Under Nevada issue preclusion law, this would be insufficient to meet the "actually litigated"

22   element, yet the court bound the insurance company to the liability established by the entry of default. As
     discussed below, however, the Nevada Supreme Court did not confront the "actually litigated"

23   requirement in the context of a default judgment until two years after it decided *Lomastro*.

         [5] The Ninth Circuit recognizes several relationships "sufficiently close" to justify a finding of

24   privity for purposes of preclusion:

25       First, a non-party who has succeeded to a party's interest in property is bound by any
         prior judgment against the party. Second, a non-party who controlled the original suit will

26       be bound by the resulting judgment. Third, federal courts will bind a non-party whose
         interests were represented adequately by a party in the original suit. In addition, "privity"

27       has been found where there is a "substantial identity" between the party and nonparty.

28   *Schimmels*, 127 F.3d at 881.

12

1   cases, was not that the companies did not defend their respective insureds, but that they did not

2   intervene to assert their defenses to the claims of their insureds against the at-fault parties."

3   (ECF#157 at 3.)  Because contractual privity does not exist between the insurer and the uninsured

4   tortfeasor, the Nevada Supreme Court eliminated that requirement in this context. 454 P.2d at

5   111.  However, the Nevada Supreme Court has not completely abandoned that requirement for all

6   other applications of preclusion; that fact supports the conclusion that the *Pietrosh* line of cases

7   should be limited to the uninsured motorist context.[6]

8           This is further confirmed by the Nevada Supreme Court's decision in *In re Sandoval*, 232

9   P.3d 422 (Nev. 2010).  In that case, the court held that "[w]hen a default judgment is entered

10  based on failure to answer, issue preclusion is not available because the issues raised in the initial

11  action were never actually litigated." 232 P.3d at 423.  This decision came two years after

12  *Lomastro*.  The Nevada Supreme Court could have used *Sandoval* to extend the *Pietrosh* line of

13  cases beyond the uninsured motorist context but chose not to.  Nothing in *Sandoval's* holding or

14  rationale suggests it was limited to the facts of that case.  The Nevada Supreme Court has never

15  applied the *Pietrosh* trilogy in the general liability context, and this Court will not expand it so.

16  Accordingly, the *Pietrosh* trilogy has no bearing on this Action as the analysis under those cases

17  is properly limited to the uninsured motorist context.

18          **(c)     The proper measure of damages for breach of the duty to defend**

19          Plaintiffs assert that because Century breached its duty to defend, (1) the defendants in the

20  Underlying Lawsuit had the right to enter into the Settlement Agreement with Plaintiffs, and (2)

21  Century is liable for all the consequential damages proximately caused by that breach, including

22  amounts in excess of the policy limits. (ECF#127 at 11-16.)  In its earlier Order denying the

---

24          [6] Even were the Court to apply the *Pietrosh* line of cases in the general liability context, Plaintiffs
25  would still be required to prove the remaining elements of issue preclusion: identity of issues, final
    judgment on the merits, and whether the issue was actually litigated. *Five Star Capital Corp. v. Ruby*, 124
26  Nev. 1048, 1055, 194 P.3d 709, 713 (2008).  The Nevada Supreme Court never announced a default
    judgment rule that completely displaces the preclusion inquiry, and this Court is disinclined to do so now.
27  Under the *Pietrosh* trilogy, only the element of privity need not be proved.

28

13

1  cross-motions for summary judgment, the Court found that Vasquez' assignment of rights to

2  Plaintiffs was valid (ECF#123 at 14-16), and Century has not asked for reconsideration of that

3  finding. Thus, the Court need only consider the proper measure of damages when an insurer

4  breaches the duty to defend.

5  Plaintiffs urge that when an insurer breaches the duty to defend, the appropriate finding is

6  liability against the insurer for the full amount of the resulting judgment, even if it exceeds the

7  policy limits. (ECF#127 at 13.) Plaintiffs rely on several cases from other jurisdictions, none of

8  which stands for the proposition that *by itself* the breach of the duty to defend creates liability for

9  the full amount of damages of a resulting judgment. Instead, those cases analyze damages in the

10  context of the insurer's bad faith.[7] Plaintiffs also cite to *Allstate Ins. Co. v. Miller*, 125 Nev. 300,

11  313-14, 212 P.3d 318, 327-28 (2009), in which the Nevada Supreme Court analyzed several

12  factors underlying bad faith but never held that mere breach of the duty to defend was a sufficient

13  basis for awarding the full amount of the resulting judgment that exceeds the policy limits. The

14  court recognized that *"[i]f an insurer violates its duty of good faith and fair dealing* by failing to

15  adequately inform the insured of a reasonable settlement opportunity, the insurer's actions can be

16  a proximate cause of the insured's damages arising from a foreseeable settlement or excess

17  judgment." *Id.* (emphasis added.)

18  It does not appear that the Nevada Supreme Court has articulated the measure of damages

19  for an insurer's mere breach of the duty to defend absent bad faith. However, in *Reyburn Lawn &*

20  *Landscape Designers, Inc. v. Plaster Dev. Co., Inc.*, 255 P.3d 268, 277 (Nev. 2011), the court

21

22  [7] *See e.g., Besel v. Viking Ins. Co. of Wisconsin*, 146 Wash. 2d 730, 735, 49 P.3d 887, 890 (2002)
   ("[I]f an insurer acts *in bad faith* by refusing to effect a settlement for a small sum, an insured can recover
23  from the insurer the amount of a judgment rendered against the insured, even if the judgment exceeds
   contractual policy limits.") (emphasis added); *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 831, 61
24  Cal. Rptr. 2d 909 (1997) ("Breach of an insurer's duty to defend violates a contractual obligation and,
   *where unreasonable*, also violates the covenant of good faith and fair dealing, for which tort remedies are
25  appropriate.") (emphasis added); *Rupp v. Transcon. Ins. Co.*, 627 F. Supp. 2d 1304, 1320 (D. Utah 2008)
   ("[T]he heart of the insurer's fiduciary duty, when handling third-party claims against its insured, is to
26  guard the best interests of the insured as zealously as it would its own. If the insurer's decision to reject
   offers of settlement and go to trial is *unreasonable*, it is at that time that the breach of duty occurs, which
27  is the crux of the insured's cause of action for bad faith.") (emphasis added) (citations omitted).

28

14

1  considered the measure of damages where an indemnitor breached a duty to defend.  The court

2  stated that such a clause "is construed under the same rules that govern other contracts." *Id.*

3  Citing California law, the court held that "[t]he breach of that duty, 'may give rise to damages in

4  the form of reimbursement of the defense costs the indemnitee was thereby forced to incur' in

5  defending 'against claims encompassed by the indemnity provision.'" *Id.* (quoting *Crawford v.*

6  *Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 557, 187 P.3d 424, 433 (2008).).

7      Similarly, courts in Colorado have held that the measure of damages for breach of the

8  duty to defend begins with the proposition that the breach is fundamentally a breach of a

9  contractual duty. *Bainbridge, Inc. v. Travelers Cas. Co. of Connecticut*, 159 P.3d 748, 756 (Colo.

10  Ct. App. 2006).  When an insurer breaches the duty to defend, damages are characterized as

11  general damages and consequential damages. *Id.*  General damages include attorney fees and the

12  reasonable costs of defense. *Id.* (citing *Giampapa v. Am. Fam. Mut. Ins. Co.*, 64 P.3d 230, 237 n.3

13  (Colo. 2003)).  Consequential damages include those damages that arise naturally from the breach

14  and were reasonably foreseeable at the time of contract. *Id.* (citing *Vanderbeek v. Vernon Corp.*,

15  50 P.3d 866, 870–72 (Colo.2002)).

16      No Nevada case supports the Plaintiffs' argument that an insurer who breaches its duty to

17  defend is automatically liable for the full amount of the resulting judgment even if it exceeds the

18  limits of the insurance policy.  California[8]—another jurisdiction the Nevada Supreme Court relied

19  on in articulating the duty to defend in *United National*, 120 Nev. at 687, 99 P.3d at 1158—

20  recognizes that "[w]here there is no opportunity to compromise[9] the claim and the only wrongful

21  act of the insurer is the refusal to defend, the liability of the insurer is ordinarily limited to the

23  [8] Both Century and Plaintiffs rely extensively on California law when it supports their respective
24  positions. *See e.g.*, Plaintiffs' Motion for Reconsideration, (ECF#127 at 9, 12, 13); Century's Motion for
  Summary Judgment, (ECF#73 at 18 (urging the Court to consult California insurance law because *United
  National* relied more heavily on California law than any other state)).

25  [9] The Court acknowledges that Plaintiffs had sent Century an offer of settlement.  However, as
26  discussed below, under *United National*, Century permissibly relied on facts extrinsic to the complaint in
  determining it had no duty to indemnify.  Indeed, the complaint had not yet been filed.  Because there was
27  no apparent evidence suggesting that Century's Garage Policy would provide coverage, Century
  reasonably believed it had no duty to defend.  Thus, it is reasonable to conclude that no real opportunity to
28  compromise existed under that settlement offer.

amount of the policy plus attorneys' fees and costs." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 659, 328 P.2d 198 (1958).[10] Similarly, Nevada has not recognized extra-contractual damages for breach of the duty to defend in the absence of a finding of bad faith. Given that and the holding in *Comunale*, the Court concludes that the Nevada Supreme Court would not allow for extra-contractual damages if the insurer did not act in bad faith.[11]

Here, the claims alleged in the underlying complaint gave rise to the possibility of coverage under Century's policy. Century breached its duty to defend under the policy, and thus is liable for damages. As discussed below, there is insufficient evidence in the record to support a finding of bad faith by Century. To the contrary, its investigation revealed that the accident likely was not a covered event. Absent bad faith, the breach of the duty to defend results in typical contractual damages. Because the defendants in the Underlying Lawsuit did not hire counsel and did not file any responsive pleadings, they apparently incurred no costs or attorney fees. Accordingly, Century's liability for breaching its duty to defend is restricted to the damages reasonably foreseeable at the time of the contract, as capped by the $1 million policy limit.

### 3.     Century's Motion for Clarification or Reconsideration (ECF#132).

Century's Motion seeks reconsideration of the following language from this Court's prior Order:

> Although this evidence is thin, at this point it is barely sufficient to establish a **potential factual dispute** whether Century conducted its investigation in good faith. **Discovery ultimately may not produce sufficient evidence** to sustain Plaintiffs' burden of proof on this point. But at this stage of the case, summary judgment in favor of Century must be denied to the extent Century

---

[10] Notably, Plaintiffs rely in part on *Comunale* in asserting that they are owed the full amount of the judgment. (ECF#127 at 13.)

[11] In a diversity action, this Court applies the substantive law of the forum state; in this case, Nevada law controls. *Mirch v. Frank*, 295 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citing *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 867 (9th Cir.1979)). In interpreting state law, federal courts are bound by the pronouncements of the state's highest court. *Id.* (citing *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1034 (9th Cir.2003)). In the absence of a controlling state decision, a federal court applying state law must apply the law as it believes the state supreme court would apply it. *Id.* (citing *Gravquick A/S v. Trimble Navigation Intn'l. Ltd.*, 323 F.3d 1219, 1222 (9th Cir.2003)).

16

1

>           relies only on Vasquez's statements to "conclusively establish" he was driving
>           in a capacity outside the scope of Century's insurance coverage.

2

3   (ECF#132 at 3 (quoting ECF#123 at 12) (emphasis added).)  Century points out that discovery

4   was closed at the time the Court entered its Order.  Thus, there could be no additional discovery

5   to "produce sufficient evidence to sustain Plaintiff's burden of proof" that Century acted in bad

6   faith.  Century next asserts that it met its burden of presenting evidence that negated an essential

7   element in Plaintiffs' claim (bad faith), and thus the burden shifted to Plaintiffs to establish a

8   genuine—rather than a potential—issue of material fact.

9           The bad faith inquiry sounds in tort for the breach of the covenant of good faith and fair

10  dealing. *U.S. Fid. & Guar. Co. v. Peterson*, 91 Nev. 617, 620, 540 P.2d 1070 1071 (1975).

11  Because the touchstone in determining bad faith is reasonableness, bad faith is usually a question

12  of fact for the jury. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 310, 212 P.3d 318, 325 (2009).

13  However, when there is no factual basis for concluding that the insurer acted in bad faith, a court

14  may determine the issue of bad faith as a matter of law. *Am. Excess Ins. Co. v. MGM Grand*

15  *Hotels, Inc.*, 102 Nev. 601, 605, 729 P.2d 1352, 1355 (1986).

16          Here, Century reasonably relied on the fact that Vasquez repeatedly and "unequivocally

17  confirmed to Century and to the police that he was not driving for the business at the time of the

18  accident." (ECF#22 at 2-3.)  Although the Court has found above that Century breached its duty

19  to defend (based on the four corners of the complaint), Vasquez's statements—and the lack of

20  contrary evidence—establish that Century did not act in bad faith in denying coverage.  Plaintiffs

21  have failed to provide evidence to show a genuine dispute of material fact as to the

22  reasonableness of Century's decision.  Thus, the Court grants Century's cross-motion for

23  summary judgment on the claims of bad faith and violations of the Unfair Claims Practices Act.

24  Accordingly, Plaintiffs are not entitled to recover any damages in excess of the $1 million policy

25  limit.[12]

26

27          [12] This holding is consistent with Nevada's rule on the duty to indemnify.  The duty to indemnify
    arises when an insured "becomes legally obligated to pay damages in the underlying action that gives rise
    to a claim under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 686, 99 P.3d

28  1153, 1157 (2004).  In *United National*, the court discussed the duty to indemnify in a different part of the

III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (ECF#127) is **GRANTED IN PART AND DENIED IN PART**, and Century's Counter-Motion for Reconsideration (ECF#132) is **GRANTED IN PART AND DENIED IN PART**.

Century breached its duty to defend the defendants in the Underlying Lawsuit.  However, Century is not bound by the default judgment entered against the defendants in the Underlying Lawsuit.  Plaintiffs may recover the damages incurred as a result of Century's breach of its duty to defend that were reasonably foreseeable at the time of the contract, but those damages are capped by the $1 million limit in the Garage Policy.  A trial will be needed to determine the amount of those damages.

Summary judgment is entered in favor of Century on Plaintiffs' claims of bad faith and violation of the Unfair Claims Practices Act.

DATED this 29th day of April, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

opinion from the duty to defend, and it rejected an analysis based on the four corners rule. *Id.* at 1157-58. "The right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial." *Id.* at 1158 (citation and quotations omitted).  Instead, the court considered evidence extrinsic to the complaint and concluded that the defendants had no duty to indemnify. *Id.*

18