1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

* * *

DANA ANDREW, as legal guardian on
behalf of Ryan T. Pretner, and RYAN T.
PRETNER,

                        Plaintiffs,

        v.

CENTURY SURETY COMPANY,

                        Defendant.

Case No. 2:12-cv-00978-APG-PAL

**ORDER DENYING MOTIONS FOR
SUMMARY JUDGMENT AND TO
STRIKE**

(Dkt. #192, #194, #197)

        This is an insurance dispute arising out of a car accident and subsequent personal injury
lawsuit. I have already ruled that defendant Century Surety Company breached its duty to defend
its insured, Blue Streak Auto Detailing, as a matter of law. The parties now dispute what
damages, if any, were caused by the breach. It is undisputed that Blue Streak incurred no costs of
defense because it defaulted in the underlying tort action. The only questions are whether the
default judgment against Blue Streak constitutes damages for which Century is liable and, if so, to
what extent.

        I reconsider and modify my prior ruling that Century's liability in this case is capped at
the policy limit of $1 million. Instead, I hold that the default judgment was a reasonably
foreseeable consequential damage caused by Century's breach of its duty to defend its insured. I
also reconsider my prior ruling that Century is not bound by the default judgment. I now hold
that Century is bound by the default judgment, absent unreasonableness, fraud, or collusion.
Century has shown the $5 million attorney fee award in the default judgment was unreasonable,
so Century is not bound by that portion of the judgment. However, genuine issues of fact remain
regarding whether the settlement agreement and subsequent default judgment were obtained
through fraud or collusion. That issue, and the amount of recoverable damages, must be tried to a
jury.

1  **I. BACKGROUND**

2    Plaintiff Ryan Pretner suffered catastrophic brain injuries after he was struck from behind

3  by the side-view mirror of a truck while he was riding his bicycle on the shoulder of a road.[1]  The

4  truck was driven by Michael Vasquez.  Vasquez worked for Blue Streak, a mobile auto detailing

5  business.  Vasquez was personally insured by non-party Progressive Insurance.  Blue Streak was

6  insured by Century.  Prior to any lawsuit being filed, Century declined to defend Blue Streak on

7  the ground that Vasquez was not working in the course and scope of his employment for Blue

8  Streak at the time of the accident.  Century based its decision on Vasquez's statements to the

9  police and to Century's employee that he was not working at the time of the accident.

10    Pretner sued Vasquez and Blue Streak in state court.  The complaint alleged that Vasquez

11  was driving in the course and scope of employment for Blue Streak at the time of the accident.

12  Pretner's attorney forwarded the lawsuit to Century, but Century again declined to defend Blue

13  Streak.  Vasquez and Blue Streak then defaulted in the state court action.  Pretner's attorney

14  forwarded the entry of default to Century.  Century responded that the claim was not covered.

15    Pretner, Vasquez, and Blue Streak then entered into a settlement agreement.  Vasquez and

16  Blue Streak agreed to allow Pretner to pursue a default judgment against them, and Blue Streak

17  assigned to Pretner all of its claims against Century.  In exchange, Pretner agreed to a covenant

18  not to execute against Vasquez and Blue Streak.  Additionally, Progressive agreed to tender the

19  $100,000 limits of its policy covering Vasquez.

20    Pretner moved for a default judgment in the state court action.  After a hearing, the state

21  court entered a default judgment against Vasquez and Blue Streak.  The default judgment set

22  forth factual findings that were deemed admitted by the default.  Those findings include that

23  Vasquez negligently injured Pretner, that Vasquez was working in the course and scope of his

24  employment with Blue Streak at the time, and that consequently Blue Streak was also liable.  The

25  default judgment entered against both Vasquez and Blue Streak was for over $18 million.

26

27  _____

28    [1] I previously set forth the facts of this case in more detail at Dkt. #123.

1    Pretner, as assignee of Blue Streak, then filed this lawsuit against Century for breach of

2  contract, breach of the implied covenant of good faith and fair dealing, and unfair claims

3  practices.  I previously ruled that Century breached its contractual duty to defend Blue Streak as a

4  matter of law because the underlying complaint alleged facts that potentially fell within the

5  policy's coverage, thereby triggering the duty to defend. (Dkt. #168 at 8-9.)  As to the parties'

6  dispute about whether Century was bound by the default judgment against its insured, I reviewed

7  a line of decisions issued by the Supreme Court of Nevada that hold an insurer is bound by a

8  judgment if it has notice of a lawsuit that implicates coverage but does not intervene.  I predicted

9  the Supreme Court of Nevada would not extend this line of cases beyond the uninsured motorist

10  context. (*Id.* at 9-13.)  I therefore concluded Century was not bound by the default judgment. (*Id.*)

11  Finally, I set forth the measure of damages for breaching the duty to defend as the reasonable

12  costs of defense in the underlying action plus "the damages reasonably foreseeable at the time of

13  the contract, capped at $1 million." (*Id.* at 15-16.)  I concluded the recoverable damages were

14  capped at the policy limit of $1 million because no genuine issue of fact remained that Century

15  did not act in bad faith. (*Id.* at 17.)

16    The parties agreed that the issue of damages could be resolved without a jury trial.

17  Accordingly, they filed motions for summary judgment on the issue of damages arising from

18  Century's breach of its duty to defend.

19    An insured is entitled to recover its costs of defense when an insurer breaches its duty to

20  defend, but it is undisputed that Blue Streak did not incur any defense costs because it defaulted

21  in the underlying personal injury lawsuit.  The only other evidence of damages is the default

22  judgment entered against Blue Streak after Century refused to defend it.  The parties dispute

23  whether this judgment constitutes recoverable damages caused by Century's breach of the duty to

24  defend.  They also dispute what preclusive effect  the underlying default judgment should have.

25  ////

26  ////

27  ////

28

1  **II. ANALYSIS**

2      **A. Consequential Damages and the Policy Limits**

3         Pretner bears the burden of showing the default judgment constitutes damages to Blue

4  Streak caused by Century's breach. *See Clark Cnty. Sch. Dist. v. Richardson Constr., Inc.*, 168

5  P.3d 87, 96 (Nev. 2007). As stated in my prior order, the Supreme Court of Nevada has not

6  specifically set forth the measure of damages for an insurer's contractual breach of the duty to

7  defend. (Dkt. #168 at 14.) However, in the related context of an indemnitor's breach of the duty

8  to defend, the Court stated that the breach "may give rise to damages in the form of

9  reimbursement of the defense costs the indemnitee was thereby forced to incur in defending

10 against claims encompassed by the indemnity provision." *Reyburn Lawn & Landscape Designers,*

11 *Inc. v. Plaster Dev. Co., Inc.*, 255 P.3d 268, 278 (Nev. 2011) (quotation omitted).

12        Nevada law provides that in a breach of contract case, a plaintiff may seek compensatory

13 damages, which "are awarded to make the aggrieved party whole and . . . should place the

14 plaintiff in the position he would have been in had the contract not been breached." *Hornwood v.*

15 *Smith's Food King No. 1*, 807 P.2d 208, 211 (Nev. 1991). This includes expectancy damages,

16 which are determined by the method set forth in the Restatement (Second) of Contracts § 347

17 (1981). *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012). Under

18 § 347:

19        [s]ubject to the limitations stated in §§ 350-53, the injured party has a right to
       damages based on his expectation interest as measured by

20        (a) the loss in value to him of the other party's performance caused by its failure or
       deficiency, plus

21

22        (b) any other loss, including incidental or consequential loss, caused by the breach,
       less

23        (c) any cost or other loss that he has avoided by not having to perform.

24        Under the contract, Blue Streak expected Century to provide a defense and, if Blue Streak

25 is found liable on a covered claim, the payment of $1 million. Thus, under § 347(a), Blue

26 Streak's expectancy damages are the costs of defense plus the policy limit of $1 million (applied

27 to any award entered against Blue Streak in the underlying lawsuit).

28

1    Under § 347(b), Blue Streak also is entitled to consequential damages for Century's

2 breach of the duty to defend. Consequential losses are those damages that "aris[e] naturally, or

3 were reasonably contemplated by both parties at the time they made the contract." *Hornwood v.*

4 *Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989) (quotation omitted); *see also*

5 Restatement (Second) of Contracts § 351(1) (1981) ("Damages are not recoverable for loss that

6 the party in breach did not have reason to foresee as a probable result of the breach when the

7 contract was made."). A loss "may be foreseeable as a probable result of a breach because it

8 follows from the breach (a) in the ordinary course of events, or (b) as a result of special

9 circumstances, beyond the ordinary course of events, that the party in breach had reason to

10 know." Restatement (Second) of Contracts § 351(2).

11    The insurer's duty to defend "is of vital importance to the insured." *Amato v. Mercury*

12 *Cas. Co.*, 53 Cal. App. 4th 825, 832 (Cal. Ct. App. 1997); *see also Dewitt Constr. Inc. v. Charter*

13 *Oak Fire Ins. Co.*, 307 F.3d 1127, 1137 (9th Cir. 2002) ("The duty to defend is one of the main

14 benefits of the insurance contract.") (quotation omitted). "The insured's desire to secure the right

15 to call on the insurer's superior resources for the defense of third party claims is, in all likelihood,

16 typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity

17 for possible liability." *Amato*, 53 Cal. App. 4th at 832 (quotation omitted). When the insurer

18 breaches the duty to defend, a default judgment is a reasonably foreseeable result because, in the

19 ordinary course, when an insurer refuses to defend its insured, a probable result is that the insured

20 will default. *See Hamlin Inc. v. Hartford Acc. & Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996) ("An

21 insurance company that refuses a tender of defense by its insured takes the risk not only that it

22 may eventually be forced to pay the insured's legal expenses but also that it may end up having to

23 pay for a loss that it did not insure against. If the lack of a defender causes the insured to throw in

24 the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting

25 judgment or settlement even if it can prove lack of coverage."); *Delatorre v. Safeway Ins. Co.*,

26 989 N.E.2d 268, 276 (Ill. Ct. App. 2013) (stating a default judgment against the insured was "the

27 natural consequence of his insurer's breach of contract"); *Maxwell v. Hartford Union High Sch.*

28

1    *Dist.*, 814 N.W.2d 484, 496 (Wis. 2012) (stating that one form of damages that "naturally flow[s]

2    from an insurer's breach of its duty to defend" is "the amount of the judgment or settlement

3    against the insured plus interest," because this is a "measure of damages actually caused by an

4    insurer's breach of the contractual duty to defend") (quotation omitted); *Amato*, 53 Cal. App. 4th

5    at 834 ("When the insurer refuses to defend and the insured does not employ counsel and presents

6    no defense, it can be said the ensuing default judgment is proximately caused by the insurer's

7    breach of the duty to defend.") (emphasis omitted).

8              Courts disagree, however, on whether, in the absence of bad faith, an insured can recover

9    in excess of the policy limits when the insurer breaches the duty to defend.  Some courts state that

10   in the absence of bad faith, an insurer who breaches the duty to defend is liable on the underlying

11   settlement or judgment only to the extent of the policy limits. *See, e.g.*, *State Farm Mut. Auto. Ins.*

12   *Co. v. Paynter*, 593 P.2d 948, 954-55 (Ariz. Ct. App. 1979) (holding that the insurer's liability for

13   refusing to defend "should be confined to the limits of the policy"); *Waite v. Aetna Cas. & Sur.*

14   *Co.*, 467 P.2d 847, 851 (Wash. 1970) (stating an insurer who wrongfully refuses to defend "will

15   be required to pay the judgment or settlement to the extent of its policy limits" and reimburse the

16   defense costs); *Schurgast v. Schumann*, 242 A.2d 695, 705 (Conn. 1968) (stating that an insurer

17   that breached its contractual duty to defend was "under a duty to pay the judgment obtained

18   against [the insured] up to the limit of liability fixed by its policy"); *Comunale v. Traders & Gen.*

19   *Ins. Co.*, 50 Cal. 2d 654, 659 (Cal. 1958) ("Where there is no opportunity to compromise the

20   claim and the only wrongful act of the insurer is the refusal to defend, the liability of the insurer is

21   ordinarily limited to the amount of the policy plus attorneys' fees and costs.").  Courts adhering to

22   this rule do not always explain why the damages for a breach of the duty to defend are capped by

23   the policy limit on the separate duty to indemnify.

24             One explanation of the reasoning behind this rule is that "the measure of damages for the

25   breach of a contract for the payment of money is the amount agreed to be paid with interest," and

26   a breach of the duty to defend "cannot be held to enlarge the limitation as to the amount fixed as

27   reimbursement for injuries to persons." *Mannheimer Bros. v. Kansas Cas. & Sur. Co.*, 184 N.W.

28

189, 191 (Minn. 1921).  This explanation does not address consequential damages resulting from the breach of the duty to defend.  The duty to defend is not based on the contractual promise to pay a certain amount of money to an injured person.  Instead, it is a promise to provide a defense, the breach of which may result in consequential damages to the insured beyond the policy limits. *Mannheimer*'s reasoning makes sense in terms of the duty to indemnify because absent bad faith, the parties would expect the insurer to pay only the policy limits on indemnification.  But it does not explain why a breach of the duty to defend should be subject to the policy's indemnification limit, which is a separate duty with separate remedies for its breach. *See Stockdale v. Jamison*, 330 N.W.2d 389, 393 (Mich. 1982), *holding limited by Frankenmuth Mut. Ins. Co. v. Keeley*, 447 N.W.2d 691 (Mich. 1989), ("Some cases state that an insurance contract is for the payment of a specific sum of money, ignoring the separate duty to defend.").

Courts that have limited damages to the policy limits have suggested that there may be circumstances where the breach of the duty to defend may require the insurer to pay in excess of the policy limits. *See Rogan v. Auto-Owners Ins. Co.*, 832 P.2d 212, 218 n.4 (Ariz. Ct. App. 1991) ("Obviously, there may be other circumstances in which a causal connection between . . . the refusal to defend and the excess judgment occurs," and offering the example where "the insured suffers a default or final judgment without the benefit of an attorney."); *Mannheimer Bros.*, 184 N.W. at 191 (declining to address whether damages would be capped by the policy limits if, for example, the insurer had a duty to defend but failed to appeal and the appeal would have been successful).  Other courts have affirmatively held that the breach of the duty to defend may require the insurer to pay in excess of the policy limits where that breach proximately causes the excess judgment against the insured, such as where the insured defaulted, because the judgment constitutes consequential damages. *See Khan v. Landmark Am. Ins. Co.*, 757 S.E.2d 151, 156 (Ga. Ct. App. 2014) (stating that "the possible damages at issue are not merely those within the indemnity coverage of the policy, but are those further damages that may flow from breach of the contract to defend" as consequential damages); *Delatorre*, 989 N.E.2d at 276 (holding insurer's failure to defend caused default and insurer therefore was liable for judgment

1  in excess of policy limits as consequential damages); *Maxwell*, 814 N.W.2d at 496-97 ("When an

2  insurer breaches a duty to defend its insured, the insurer is on the hook for all damages that result

3  from that breach of its duty . . . includ[ing] damages beyond the policy limits."); *Reis v. Aetna*

4  *Cas. & Sur. Co. of Ill.*, 387 N.E.2d 700, 710 (Ill. Ct. App. 1978) (stating that "damages for a

5  breach of the duty to defend are not inexorably imprisoned within the policy limits, but are

6  measured by the consequences proximately caused by the breach"); *Thomas v. W. World Ins. Co.*,

7  343 So.2d 1298, 1302 (Fla. Ct. App. 1977) (stating "the insurer may be liable for an excess

8  judgment where (1) due to the actions of the insurer, the insured suffers a default or final

9  judgment without benefit of an attorney, and (2) the insured can prove the final judgment would

10  have been lower had the suit been properly defended").

11  Thus, in the context of a breach of the duty to defend, bad faith is not required to impose

12  liability on the insurer in excess of the policy limits.  This does not negate the distinction between

13  a breach of the contractual duty to defend and a bad faith breach of the contract.  There are still

14  consequences for an insurer acting in bad faith, including that it may require the insurer to pay

15  even unforeseeable consequential damages as well as punitive damages. *See Bainbridge, Inc. v.*

16  *Travelers Cas. Co. of Conn.*, 159 P.3d 748, 756 (Colo. Ct. App. 2006) ("If the circumstances are

17  sufficiently egregious to constitute a tort, then the consequential damages include all damages

18  that were proximately caused by the breach, regardless of foreseeability."); *White v. Unigard Mut.*

19  *Ins. Co.*, 730 P.2d 1014, 1017-18 (Idaho 1986) (same); *United Fire Ins. Co. v. McClelland*, 780

20  P.2d 193, 198 (Nev. 1989) (punitive damages).  Moreover, there is no justification for making a

21  special rule about consequential damages for insurers.  Nevada's usual rule is that any party that

22  breaches a contract is liable for consequential damages.  Insurers should be held to the same

23  standard. *Stockdale*, 330 N.W.2d at 392 ("If the insurer had an obligation to defend and failed to

24  fulfill that obligation, then, like any other party who fails to perform its contractual obligations, it

25  becomes liable for all foreseeable damages flowing from the breach."); *Thomas*, 343 So.2d at

26  1304 ("It seems only fair that an insurer whose contracts are by their very nature 'adhesive'

27  should be held to at least the same standard of damages applicable to other contracting parties.").

28

1    In Nevada, the amount expected to be paid under a contract is not the only measure of

2    damages for a breach.  Nevada also allows recovery of consequential losses.  Thus, if the default

3    judgment was a reasonably foreseeable consequence of Century's breach, then Century is liable

4    for the entire amount of the default judgment as consequential damages resulting from the breach

5    of its duty to defend, regardless of the policy limits.

6    Century argues that if it is liable for the entire default judgment amount, then the insured

7    is receiving policy benefits he did not contract for and the insurer is paying for a risk it did not

8    contractually agree to cover.  But Century is confusing its indemnification obligations with its

9    duty to defend.  Century agreed to defend its insured, and under Nevada law it is liable for

10   consequential damages arising from a breach of that duty, even if its separate duty to indemnify

11   would limit recovery to $1 million for a breach of that contractual provision.

12   Century next argues that if it is liable for the entire default judgment without capping it at

13   the policy limit, the insured is placed in a better position than it would have been in had Century

14   performed its contractual obligations.  According to Century, if it had performed, the most Blue

15   Streak could have hoped for is $1 million plus costs of defense.  This again confuses the duty to

16   indemnify with the duty to defend.  If Century had performed, by Century's own arguments Blue

17   Streak would have had a complete defense to any liability (that is, Blue Streak would not be liable

18   because Vasquez was not driving in the course and scope of his employment).  Blue Streak

19   therefore would have been entitled to a judgment in its favor against Pretner.  Instead, Blue Streak

20   defaulted and now has an $18 million judgment against it. *See Delatorre*, 989 N.E.2d at 276

21   (stating the "general rule . . . for breach of contract [is to] place the injured party in the same

22   position it would have been in had the contract been fully performed.  Here, no default, no default

23   judgment.") (internal citation omitted).

24   As to foreseeability, Century argues that it was not reasonably foreseeable at the time of

25   contracting that it would have to pay for a non-covered claim.  But holding Century liable for the

26   default judgment would not be based on Century indemnifying Blue Streak for a non-covered

27   claim.  It is based on Century having to pay for all consequential damages arising out of a breach

28

of its duty to defend its insured.  Century has not argued it was unforeseeable that its insured, a mobile auto detailing business, could cause a car accident resulting in catastrophic injuries.  It also was foreseeable that a plaintiff's attorney would allege that the business's vehicle was being used in the course and scope of employment at the time of the accident.  It therefore was foreseeable at the time of contracting that if Century refused to provide a defense in the face of such allegations, a substantial default judgment against its insured could result.

As for proximate cause, Century has consistently asserted that Vasquez was not in the course and scope of employment at the time of the accident.  Thus, by Century's own position, had it defended Blue Streak, Blue Streak would have obtained a judgment in its favor instead of an $18 million judgment against it.  Consequently, Century's breach of its duty to defend proximately caused the default judgment. *See Thomas*, 343 So.2d at 1302; *Rogan*, 832 P.2d at 218 n.4 (stating "there may be . . . circumstances in which a causal connection between . . . the refusal to defend and the excess judgment occurs," such as where "the insured suffers a default or final judgment without the benefit of an attorney").[2]

In sum, Nevada law allows for recovery of all reasonably foreseeable consequential damages for a breach of contract, regardless of the good or bad faith of the breaching party. There is no special rule for insurers that caps their liability at the policy limits for a breach of the duty to defend.  I therefore reconsider my prior ruling that because Century did not act in bad faith, its liability is capped at the $1 million policy limits.  A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("It is common for both trial and appellate courts to reconsider and change positions when they conclude that they made a mistake.").  The

---

[2] For an example of when the breach of the duty to defend would not proximately cause an excess judgment, *see Rogan*, 832 P.2d at 217 (stating there is no causal connection between the breach of the duty to defend and an excess judgment where the insured defends itself because "[g]iven competent counsel to represent the insured, the judgment would be the same as if the defense had been conducted by the insurer's counsel").

1   default judgment represents consequential damages to Blue Streak that may be recoverable as a

2   result of Century's breach of the duty to defend.

3   **B. Reconsideration of the Binding Effect of the Underlying Judgment**

4         Century contends that it should not be bound by the default judgment, including the

5   amount of the judgment.  In a prior order, I agreed with Century's position.  I noted that the

6   "Nevada Supreme Court has held that where an insurer has notice of an adversarial proceeding

7   that implicates uninsured motorist coverage under its policy but refuses to intervene, the insurer

8   will be bound by the judgment thereafter obtained." (Dkt. #168 at 9-10 (citing *Allstate Ins. Co. v.*

9   *Pietrosh*, 454 P.2d 106, 111 (Nev. 1969)).)  I noted that the *Pietrosh* court subverted the normal

10  privity requirement for claim and issue preclusion, but that the "public policy favoring

11  intervention and 'avoiding multiple litigation . . . carries greater weight' than the policy requiring

12  privity for application of preclusion in the insurance context." (*Id.* at 10 (quoting *Pietrosh*, 454

13  P.2d at 111).)

14        I considered two other cases in the uninsured motorist context, *State Farm Mutual*

15  *Automobile Insurance Company v. Christensen*, 494 P.2d 552 (Nev. 1972) and *Estate of*

16  *Lomastro v. American Family Insurance Group*, 195 P.3d 339 (Nev. 2008). (*Id.* at 10-11.)

17  *Christensen* held that an insurer who elects not to intervene in its insured's lawsuit against an

18  uninsured motorist is bound by a default judgment entered against the uninsured motorist. 494

19  P.2d at 553.  The Supreme Court of Nevada reached a similar result in *Lomastro*.  There, the

20  insurer did not intervene in its insured's lawsuit against the uninsured motorist until after the

21  uninsured motorist had defaulted. 195 P.3d at 1063.  The trial court allowed intervention, but it

22  held that the entry of default barred the insurer from contesting the uninsured motorist's liability.

23  *Id.*  The Supreme Court of Nevada affirmed, holding that the entry of default was sufficient to

24  bind the insurer. *Id.* at 1067-69.

25        After reviewing these cases, I concluded they were "best limited to the context of

26  uninsured motorist claims" because the Supreme Court of Nevada had not extended the principles

27  to the general liability context. (Dkt. #168 at 12-13.)  Additionally, the cases eliminated the

28

1    privity requirement in this particular context where it would be virtually impossible for the

2    insured to show his insurer was in privity with the uninsured motorist. (*Id.*)  I noted that the

3    Supreme Court of Nevada later held, in a case not involving insurance, that a default judgment

4    based on a defendant's failure to answer does not have preclusive effect because the issues have

5    not been actually litigated under these circumstances. (*Id.* at 13 (citing *In re Sandoval*, 232 P.3d

6    422, 425 (Nev. 2010)).)  As a result of this analysis, I held the *Pietrosh*, *Christensen*, and

7    *Lomastro* line of cases is best limited to the uninsured motorist context and Century therefore is

8    not bound by the default judgment against Blue Streak. (*Id.*)

9            After reevaluating relevant authority, including *Pietrosh*'s reasoning and other

10   jurisdictions' decisions, I now reconsider my earlier decision.  Many jurisdictions hold that when

11   an insurer has notice of the lawsuit against its insured and breaches its duty to defend, it is bound

12   by the resulting judgment, default judgment, or settlement, in the absence of fraud or collusion,

13   with respect to all material findings of fact necessary to the judgment or settlement.[3]  This is a

14   _____

15           [3] *See Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 901 (9th Cir.
     2000) (applying California law and stating it is the "general rule . . . that an insurer that wrongfully refuses
16   to defend is liable on the judgment against the insured," and it is "no defense that the ultimate judgment
     against the insured is not rendered on a theory within the coverage of the policy."); *Hamlin Inc.*, 86 F.3d at
17   94; *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 240-41 (4th Cir. 1990) (applying
     North Carolina law that an insurer who breaches the duty to defend "is estopped from denying coverage
18   and is obligated to pay the amount of any reasonable settlement made in good faith by the insured")
     (quotation omitted); *Colorado Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 770 (Ariz. Ct. App.
19   2012) ("As long as the stipulated judgment is not fraudulent or collusive, an insurer that has failed to
     defend is bound by the judgment with respect to all matters which were litigated or could have been
20   litigated in that action.") (quotation omitted); *Chandler v. Doherty*, 702 N.E. 2d 634, 639 (Ill. Ct. App.
     1998) (stating that when an insurer breaches its duty to defend, "the insurer is estopped from asserting any
21   policy exclusions or defenses in a later garnishment action by the insured or a judgment creditor"); *Willcox
     v. Am. Home Assur. Co.*, 900 F. Supp. 850, 855 (S.D. Tex. 1995) ("As a consequence of the breach, the
22   insurer is liable for any damages assessed against the insured, up to the policy limits, subject only to the
     condition that any settlement be reasonable."); *Pruyn v. Agric. Ins. Co.*, 36 Cal. App. 4th 500, 514 (Cal.
23   Ct. App. 1995) ("It is the general rule that a liability insurer who has had an opportunity to defend the
     underlying action brought against its insured is bound by the judgment against its insured as to all issues
24   which were litigated in the action.") (quotation omitted); *Paynter*, 593 P.2d at 950 (collecting cases
     applying the "general rule" that "in the absence of fraud or collusion, an insurance company which refuses
25   to defend its insured is bound by a judgment against its insured with respect to all matters which were
     litigated or could have been litigated in that action"); *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 737
26   (Tenn. 1978) ("We have no quarrel with the general rule that in the absence of fraud or collusion an
     insurer, who has the duty to defend, has timely notice and elects not to defend, is bound by the
27   judgment in such a case as to issues which were or might have been litigated therein."); *Hogan v. Midland
     Nat'l Ins. Co.*, 476 P.2d 825, 832 (Cal. 1970) ("An insurer that has been notified of an action and refuses

consequence of the insurer's breach of the duty to defend. *Pruyn v. Agric. Ins. Co.*, 36 Cal. App. 4th 500, 515 n.15 (Cal. Ct. App. 1995) ("One of the consequences of an insurer's failure to defend is that it may be bound, in a subsequent suit to enforce the policy . . . by the express or implied resolution in the underlying action of the factual matters upon which coverage turns."). It is designed to encourage the insurer to participate to avoid multiple lawsuits over the same issues and to prevent inconsistent judgments. *See Hamilton v. Maryland Cas. Co.*, 41 P.3d 128, 135 (Cal. 2002) ("In effect, when the insured tenders the suit, the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back due to process to void a deal the insured has entered to eliminate personal liability.") (quotation omitted); *Exec. Risk Indem., Inc. v. Jones*, 171 Cal. App. 4th 319, 333-35 (Cal. Ct. App. 2009) ("It is not unfair that an insurance company is not entitled to relitigate issues in a second lawsuit that it had the right to litigate in the initial lawsuit. Rather, that potential result will encourage the insurance company to participate in the initial action.").

These policy concerns are similar to those identified by the Supreme Court of Nevada in *Pietrosh*. There, the Court noted that insurance policies are not "ordinary" contracts because they are "complex instrument[s], unilaterally prepared and seldom understood by the insured." 454 P.2d at 110. Consequently, the insured and insurer "are not similarly situated. The company and its representatives are expert in the field; the insured is not." *Id.* The Supreme Court of Nevada therefore "place[s] the burden of affirmative action upon the insurance company." *Id.* Additionally, the Court concluded that "the avoidance of multiple litigation" carried "greater weight" than concerns about privity and forcing the insurer to intervene. *Id.* at 111.

These policy considerations, along with the related concern of preventing inconsistent judgments, are not unique to the uninsured/underinsured motorist context. Rather, they are magnified when an insurer breaches its duty to defend its insured because the insurer not only had

---

to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured. The insurer is not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured.") (quotation omitted).

the opportunity to participate, it had a contractual obligation to do so.  Further, binding an insurer

to the underlying judgment when it breaches its duty to defend incentivizes it to resolve all doubts

about the duty to defend in the insured's favor by raising the risk level for an insurer who opts not

to defend. *See United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1158 (Nev. 2004) (en

banc) ("If there is any doubt about whether the duty to defend arises, this doubt must be resolved

in favor of the insured."); Restatement (Second) of Judgments § 58 cmt. a ("The duty to provide a

defense is enforced by rules creating strong disincentives against default in performance of the

duty.").

This is consistent with the Restatement (Second) of Judgments § 58:

> (1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:
>
> > (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and
> >
> > (b) The indemnitor is precluded from relitigating those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.

*See also id.* cmt. a, illus. 1; Restatement (First) of Judgments § 107 cmts. c, f (1942) (stating that

if an indemnitor owes a duty to defend and "fails to give this assistance at the time when it is of

greatest importance, it is fair that he should abide by the result of the trial" even in the case of a

default judgment, so long as there is no fraud or collusion).  The Supreme Court of Nevada looks

to the Restatement of Judgments for guidance. *See, e.g.*, *Alcantara ex rel. Alcantara v. Wal-Mart

Stores, Inc.*, 321 P.3d 912, 915-18 (Nev. 2014); *Personhood Nevada v. Bristol*, 245 P.3d 572, 576

(Nev. 2010).  Thus, I predict[4] that the Supreme Court of Nevada would extend the *Pietrosh* line

---

[4] When a federal court interprets state law, it is bound by the decisions of the state's highest court. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004).  Where the state's highest court has not decided the issue, a federal court must predict how the state's highest court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).  I may use "decisions from other

1  of cases beyond the uninsured/underinsured motorist context to bind an insurer who breaches its

2  duty to defend in the general liability context and would preclude the insurer from re-litigating

3  material findings of fact essential to the judgment against the insured.

4       This includes precluding the insurer from re-litigating a coverage defense that contradicts

5  the facts necessary to the underlying judgment.  Some courts allow an insurer who breaches its

6  duty to defend to contest whether the underlying judgment or settlement actually falls within the

7  policy's coverage.[5]  These courts reason that the duty to defend and the duty to indemnify are

8  separate contractual obligations, so allowing an insured to recover the amount of the judgment or

9  settlement for a non-covered claim confuses the two duties and their appropriate remedies. *See*

10  *Flannery v. Allstate Ins. Co.*, 49 F. Supp. 2d 1223, 1227-28 (D. Colo. 1999); *Sentinel Ins. Co.,*

11  *Ltd. v. First Ins. Co. of Hawai'i, Ltd.*, 875 P.2d 894, 912 (Haw. 1994) (stating that binding an

12  insurer to a finding of coverage based on a breach of the duty to defend "subverts any meaningful

13  distinction between the duty to defend and the separate duty to indemnify and, in many cases,

14  serves no more than to punish the insurer for the breach of a contractual duty").  These courts also

15  reason that precluding the insurer from challenging coverage creates a bargain the parties did not

16  agree to by extending coverage to non-covered claims. *See Colonial Oil Indus. Inc. v.*

17  *Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671*, 491 S.E.2d 337, 339 (Ga.

18

19  ───────────

20  jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co.*, 379 F.3d at 560 (quotation omitted).

21       [5] *See, e.g.*, *Dewitt Constr. Inc.*, 307 F.3d at 1137 (applying Washington law); *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1493 (5th Cir. 1992) (stating that although the breaching

22  insurer is bound by a finding of the insured's liability, coverage is a different question, and coverage cannot be created through estoppel); *Underwriters at Lloyds v. Denali Seafoods, Inc.*, 927 F.2d 459, 464

23  (9th Cir. 1991) (stating "an insurer's failure to defend a claim ultimately found not to be covered by the policy should not be subject to reimbursement within the policy limits"); *Flannery v. Allstate Ins. Co.*, 49

24  F. Supp. 2d 1223, 1227-28 (D. Colo. 1999) (noting disagreement and collecting cases on both sides, and ultimately adopting the rule that an insurer is not precluded from contesting coverage); *Colo. Cas. Ins. Co.*,

25  288 P.3d at 771 (stating an insurer "is liable for the stipulated judgment only if the judgment constituted a liability falling within its policy"); *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos.*

26  *TO31504670 & TO31504671*, 491 S.E.2d 337, 339 (Ga. 1997); *Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.*, 740 F.2d 647, 652 (Mo. Ct. App. 1984) (stating that "an insurance company is liable to the limits

27  of its policy plus attorney fees, expenses and other damages where it refuses to defend an[] insured who is in fact covered") (quotation omitted).

28

1    1997) (stating that the duty to indemnify is independent of the duty to defend, and breach of the

2    duty to defend "should not enlarge indemnity coverage beyond the parties' contract"); *Sentinel*

3    *Ins. Co., Ltd.*, 875 P.2d at 912 (citing cases); *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*,

4    64 N.Y.2d 419, 424 (1985) ("By holding the insurer liable to indemnify on the mere 'possibility'

5    of coverage perceived from the face of the complaint . . . the court has enlarged the bargained-for

6    coverage as a penalty for breach of the duty to defend, and this it cannot do.").

7            But other courts allow the breaching insurer to contest coverage only so long as it does not

8    contradict any findings in the underlying judgment against its insured.  These courts reason that

9    the insurer had not only the opportunity but the obligation to participate in the litigation, and the

10   insurer therefore cannot re-litigate any issue decided in the judgment, default judgment, or

11   settlement against its insured.  Additionally, requiring the insurer to participate or be bound

12   prevents multiple lawsuits on the same questions and avoids potential inconsistent results. *See* n.2

13   *supra*.

14           Because the Supreme Court of Nevada has already expressed its policy preferences in

15   favor of putting the burden on the insurer to intervene and avoiding multiple lawsuits, and

16   because that Court tends to follow the Restatement, I predict it would hold that an insurer cannot

17   re-litigate any issue of coverage that would contradict the facts necessary to the insured's liability

18   in the underlying action.  However, the insurer is bound only to those matters necessary to resolve

19   the insured's liability.  Thus, if an insurer has other coverage defenses that do not deny the factual

20   findings in the underlying judgment or settlement, the insurer still may raise those defenses. *See,*

21   *e.g.*, *Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825, 832 (Cal. 1970) (stating the insurer is not

22   bound "as to issues not necessarily adjudicated in the prior action and can still present any

23   defenses not inconsistent with the judgment against the insured") (quotation omitted); *Pruyn*, 36

24   Cal. App. 4th at 515 n.15 (stating that "where the issues upon which coverage depends are not

25   raised or necessarily adjudicated in the underlying action, then the insurer is free to litigate those

26   issues in the subsequent action and present any defenses not inconsistent with the judgment

27

28

1   against its insured"); Restatement (Second) of Judgments § 58(1)(b); Restatement (First)

2   Judgments § 107 cmt. g (1942).

3         Here, Century knew the underlying complaint alleged Vasquez was working in the course

4   and scope of his employment for Blue Streak, and it knew an entry of default had been entered

5   against Blue Streak.  Under Nevada law, facts in the complaint are deemed admitted by an entry

6   of default. *Lomastro*, 195 P.3d at 345.  Thus, Century assumed the risk that these facts would be

7   found against its insured if a default judgment was entered.  If Century wanted to litigate the issue

8   of whether Vasquez was in the course and scope of his employment, it should have "provided a

9   defense, reserved its rights, and filed a motion for summary judgment in the early stages of the

10   [u]nderlying [l]awsuit to resolve that issue up front." (Dkt. #168 at 9 n.3.)  Or it could have

11   provided a defense and filed a separate lawsuit for a declaration that it owed no duty to defend.

12   But what it cannot do is abandon its insured, allow a default judgment to be taken, and then re-

13   litigate any fact necessarily decided in the default judgment.  Permitting it to do so would

14   contravene the Supreme Court of Nevada's policy choice to give greater weight to avoiding

15   multiple lawsuits than to concerns about privity or forcing an insurer to intervene.  Additionally,

16   precluding Century from re-litigating these issues prevents inconsistent judgments and

17   encourages insurers to comply with their duty to defend.

18         At the September 17, 2015 hearing, Century argued that it should not be bound by the

19   underlying judgment because an insurer who denies coverage has a conflict of interest with its

20   insured.  Some courts acknowledge an exception from the usual rule that an insurer is bound by

21   the underlying judgment where the insurer and insured have a conflict of interest. *See Farm*

22   *Bureau Mut. Auto. Ins. Co. v. Hammer*, 177 F.2d 793, 801 (4th Cir. 1949); *State Farm Fire &*

23   *Cas. Co. v. Garrity*, 785 F.2d 1225, 1226 (4th Cir. 1986); *Fireman's Fund Ins. Co. v. Rairigh*,

24   475 A.2d 509, 514-15 (Md. Ct. App. 1984); *Kelly v. Cherokee Ins. Co.*, 574 S.W.2d 735, 737

25   (Tenn. 1978).

26

27

28

1        I need not decide whether the Supreme Court of Nevada would recognize an exception for

2   a conflict of interest and what an insurer must do to validly invoke this exception[6] because there

3   is no conflict of interest in this case.  After the September 17, 2015 hearing in this case, the

4   Supreme Court of Nevada issued a decision which addresses whether an insurer must provide

5   independent counsel for its insured when there is a conflict of interest between the insurer and its

6   insured. *State Farm Mut. Auto. Ins. Co. v. Hansen*, --- P.3d ----, Adv. Op. No. 74 (Sept. 24, 2015)

7   (en banc).  There, the Court held that if a conflict exists, "Nevada law requires the insurer to

8   satisfy its contractual duty to provide representation by permitting the insured to select

9   independent counsel and by paying the reasonable costs of such counsel." *Id.*, Adv. Op. at 9.  The

10  Court also held that "a reservation of rights does not create a per se conflict." *Id.* at 11. Rather, the

11  question is whether there is "an actual conflict of interest." *Id.*  Nevada Rule of Professional

12  Conduct 1.7(a) is the standard to determine whether there is an actual conflict. *Id.*  Under that

13  Rule, there is a conflict of interest for a lawyer to represent two clients if: "(1) [t]he representation

14  of one client will be directly adverse to another client; or (2) [t]here is a significant risk that the

15  representation of one or more clients will be materially limited by the lawyer's responsibilities to

16  another client, a former client or a third person or by a personal interest of the lawyer."

17       There is no such conflict here because Century's reason for denying coverage would have

18  given Blue Streak a complete defense to the claims against it.  If Century was correct that

19  Vasquez was not working in the course and scope of employment with Blue Streak, then the very

20  reason Century denied it owed Blue Streak a defense would have entitled Blue Streak to a

21  judgment in Blue Streak's favor against Pretner.  Century's and its insured's interests were

22  therefore aligned in showing that Vasquez was not driving in the course and scope of employment

23

24       [6] *See Wear v. Farmers Ins. Co. of Wash.*, 745 P.2d 526, 528 (Wash. Ct. App. 1987) (stating an
    insurer is not bound by the underlying judgment if a conflict exists and the insurer defended under a

25  reservation of rights); *State Farm Mut. Auto. Ins. Co. v. Glasgow*, 478 N.E.2d 918, 923 (Ind. Ct. App.
    1985) (stating a conflict of interest "preclude[s] the application of collateral estoppel . . . only where: (1)

26  the insurance company actually participates in some part of the insured's defense in the underlying tort
    action, either directly or by reimbursing the insured's personal attorney, . . . and (2) the insurance company

27  gives its insured clear and prompt notice of the existence and nature of the conflict of interest, and its
    implications for the insured"); Restatement (Second) of Judgments § 58(2) cmt. a.

28

1   at the time of the accident. *See also Spring Vegetable Co. v. Hartford Cas. Ins. Co.*, 801 F. Supp.

2   385, 393 (D. Or. 1992); Restatement (Second) of Judgments § 58(2) (stating a conflict of interest

3   "exists when the injured person's claim against the indemnitee is such that it could be sustained

4   on different grounds, one of which is within the indemnitor's obligation to indemnify and another

5   of which is not").

6       Because Blue Streak could be liable only if Vasquez was working in the course and scope

7   of his employment at the time of the accident, that fact necessarily was decided by the default

8   judgment against Blue Streak. The default judgment recited this specific finding. The default

9   judgment also determined the judgment amount, which in this case reflects the measure of

10   damages suffered by Blue Streak as a result of the breach of the duty to defend. Century

11   therefore cannot relitigate those issues. It is bound by the default judgment unless, as discussed

12   below, the settlement agreement and subsequent default judgment were unreasonable, fraudulent,

13   or collusive.[7]

14           **C. Unreasonable, Fraudulent, or Collusive Settlement**

15       When an insurer refuses to defend its insured, the insured "may, without forfeiture of his

16   right to indemnity, settle with the [injured party] upon the best terms possible, taking a covenant

17   not to execute." *Samson v. Transamerica Ins. Co.*, 30 Cal. 3d 220, 240 (Cal. 1981) (quotation

18   omitted); s*ee also Willcox v. Am. Home Assur. Co.*, 900 F. Supp. 850, 855 (S.D. Tex. 1995) ("It

19   is well settled under Texas law that once an insurer has breached its duty to defend, as in the

20   instant case, the insured is free to proceed as he sees fit; he may engage his own counsel and

21   either settle or litigate, at his option."). In this context, "the covenant not to execute is not a

22   release which would permit the insurer to escape its obligations." *Paynter*, 593 P.2d at 953; *see*

23   *also Willcox*, 900 F. Supp. at 856 (stating that "in Texas, a covenant not to execute against the

24   insured, given by the plaintiff in an underlying suit, does not release the insurance carrier from

25

---

26       [7] At the September 17, 2015 hearing, Pretner argued that Century has never contended the
settlement agreement and resulting default judgment were unreasonable or the product of fraud or

27   collusion. But Century has raised these issues from the beginning of the case. (Dkt. #7 at 19; Dkt. #22 at
20-25.) Century did not continue to argue the point in subsequent filings because I previously ruled that

28   Century was not bound by the default judgment.

liability"). A "covenant not to execute is merely a contract and not a release." *Globe Indem. Co. v. Blomfield*, 562 P.2d 1372, 1375 (Ariz. Ct. App. 1977). "[T]herefore, . . . the insured's tort liability remains but . . . he has an action for breach of contract if the plaintiff attempts to collect the judgment in violation of the covenant." *Id.* Allowing the breaching insurer to argue that the insured suffered no damages because of the covenant not to execute would "wholly undermine the purpose of such agreements." *Paynter*, 593 P.2d at 953. It also would deprive the insured who has been abandoned by its insurer of a means to protect itself. *Globe Indem. Co.*, 562 P.2d at 1376. Consequently, an insurer is bound by its insured's settlement (and any resulting judgment) so long as the settlement and judgment are reasonable and not collusive or fraudulent. *Pruyn*, 36 Cal. App. 4th at 515 ("Courts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby."); *see also* n.2 *supra*.

Here, Century is bound by the default judgment's damage amount as a measure of Blue Streak's consequential damages, unless it can show that the default judgment amount was unreasonable or that it was procured through fraud or collusion. As discussed below, the default judgment amount is unreasonable because it awards $5 million in attorney's fees without a legal basis. Additionally, genuine issues of fact remain as to whether the default judgment was procured through fraud or collusion.

### 1. Unreasonable Judgment Amount

The state court entered a judgment in the amount of $12,888,492.66 in damages plus $6,295.99 in costs. (Dkt. #14-27 at 6.) The state court added another $5,155,396.80 in attorney's fees. (*Id.*)

Century argued at summary judgment that the default judgment was unreasonable in amount because it included the attorney's fee award even though Pretner did not seek attorney's fees in the application for default judgment and even though there was no legal basis to award the

1   fees. (Dkt. #22 at 24.)  Pretner responded that a district court has discretion to award attorney's

2   fees following a default judgment. (Dkt. #49 at 26 (citing *Foster v. Dingwall*, 227 P.3d 1042,

3   1052 (Nev. 2010) (en banc).)

4        In Nevada, a district court generally may not award attorney's fees "unless authorized to

5   do so by a statute, rule or contract." *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012).  Nevada

6   statutorily allows recovery of attorney's fees where (1) "the prevailing party has not recovered

7   more than $20,000" or (2) the court finds that a claim or defense "was brought or maintained

8   without reasonable ground or to harass the prevailing party." Nev. Rev. Stat. §§ 18.010(2)(a)-(b).

9        Here, Pretner recovered more than $20,000, so the attorney fee award could not have been

10  based on § 18.010(2)(a).  Because Vasquez and Blue Streak defaulted, they did not maintain any

11  defense.  As a result, there was not (and could not have been) a finding that they acted without

12  reasonable grounds or to harass under § 18.101(2)(b).  Consequently, there was no legal basis to

13  award attorney's fees.

14       Additionally, the award of over $5 million in attorney's fees for prosecuting a default

15  judgment was unsupported.  Pretner did not request attorney's fees in the application for default

16  judgment and presented no documentary evidence to support the award. (Dkt. #14-26 at 12-13.)

17       Pretner's reliance on *Foster* is misplaced.  There, the district court awarded attorney's fees

18  for discovery violations and for frivolous claims and defenses, as allowed under § 18.010(2)(b).

19  227 P.3d at 1052.  That court therefore had a basis to award attorney's fees under a discovery rule

20  and by statute.  In contrast, Pretner has not identified any statute, rule, or contract to support the

21  fee award.

22       The attorney's fee award was unreasonable because it had no legal or factual basis.

23  However, Century has never challenged the settlement (as opposed to the judgment) as being

24  unreasonable.  Nor has Century argued that the remaining $12 million judgment was

25  unreasonable.  Accordingly, the maximum amount of the default judgment that Century may be

26  liable for is $12,494,788.65 ($12,488,492.66 in damages and $6,295.99 in costs).

27

28

1              *2. Fraudulent or Collusive Settlement and Resulting Judgment*

2          It is not fraudulent or collusive for the insured to assign its rights against its insurer and to

3    receive a covenant not to execute in return. *Samson*, 30 Cal. 3d at 240-41.  By executing such an

4    agreement, the insured "attempt[s] only to shield himself from the danger to which [his insurer]

5    exposed him." *Id.* at 241 (quotation omitted); *see also Damron v. Sledge*, 460 P.2d 997, 1001

6    (Ariz. 1969) ("It cannot be held that as a matter of law collusion exists simply because a

7    defendant chooses not to defend when he can escape all liability by such an agreement, and must

8    take large financial risks by defending.").  And where there is "significant independent

9    adjudicatory action by the court," the "risk of a fraudulent or collusive settlement between an

10   insured and the claimant" is mitigated. *Pruyn*, 36 Cal. App. 4th at 517.

11         But an insurer is not bound by "those trial proceedings which are clearly a patent sham

12   collusively designed to create a judgment for which liability insurance coverage would then

13   exist." *Id.* at 517 n.16.  A "stipulated or consent judgment which is coupled with a covenant not to

14   execute against the insured brings with it a high potential for fraud or collusion" because "the

15   insured's best interests are served by agreeing to damages in any amount as long as the agreement

16   requires the insured will not be personally responsible for those damages." *Id.* at 518 (quotation

17   omitted).  Consequently, "a stipulated judgment should only bind an insurer under circumstances

18   which protect against the potential for fraud and collusion." *Id.*

19         The Supreme Court of Nevada has not addressed what constitutes fraud or collusion in

20   this context.  But other courts have indicated that fraud and collusion occur "when the purpose is

21   to injure the interests of an absent or nonparticipating party, such as an insurer or nonsettling

22   defendant." *Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 19 N.E. 3d 1100, 1120 (Ill. Ct. App.

23   2014); *see also Andrade v. Jennings*, 54 Cal. App. 4th 307, 327 (Cal. Ct. App. 1997).  Some

24   examples of fraud or collusion are self-evident, such as where the insured agrees to testify falsely

25   to create coverage or the parties collusively agree to an unsupportable amount of damages.

26   *Damron*, 460 P.2d at 1001.

27

28

But generally what may constitute fraud or collusion is a fact-intensive inquiry determined on a case-by-case basis. *Andrade*, 54 Cal. App. 4th at 327. Factors to consider include, but are not limited to, whether the settlement was unreasonable; whether it involved any misrepresentation or concealment of material facts; whether there was a lack of arms-length negotiation; whether there were "attempts to affect the insurance coverage" or to "artificially increase damages flowing from the insurer's breach of the duty to defend"; and whether there is "profit to the insured." *Cent. Mut. Ins. Co.*, 19 N.E. 3d at 1120 (quotation omitted). Additionally, the fact finder may consider the settlement amount compared to the value of the case or awards in similar cases, the facts known to the settling insured, whether there is a covenant not to execute, and the failure of the settling insured to consider viable available defenses. *Id.* at 1121; *Andrade*, 54 Cal. App. 4th at 331. Other relevant factors may include whether the non-participating insurer knew about the prove-up hearing and whether the presiding judge was informed that there was a covenant not to execute. *Andrade*, 54 Cal. App. 4th at 325-26, 332-33.

Whether a settlement agreement was fraudulent or collusive is an issue of fact. *Cent. Mut. Ins. Co.*, 19 N.E. 3d at 1121. The insurer who breached its duty to defend bears the burden of showing by a preponderance of the evidence that the agreement was fraudulent or collusive. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 123 (Colo. 2010) (characterizing the issue of collusion as an affirmative defense for the insurer to raise and prove); *Pruyn*, 36 Cal. App. 4th at 530 ("It is sound and rational to conclude that the burden of showing that the settlement does not reflect the fact and amount of the insured's liability should fall upon the insurer whose breach has occasioned the settlement.") (quotation and emphasis omitted); *see also Clark Cnty. Sch. Dist.*, 168 P.3d at 94 (stating an affirmative defense raises "new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true") (quotation omitted).

Genuine issues of material fact remain regarding whether the settlement agreement was the product of fraud or collusion. Viewing the facts in the light most favorable to Century, a reasonable jury could find the settlement agreement was fraudulent or collusive. The underlying

complaint alleged that Vasquez was in the course and scope of his employment despite Vasquez's

steadfast position from the day of the accident that he was on a personal errand and was not

working at the time of the accident.  Vasquez told Century and Progressive that he was not

working at the time of the accident. (Dkt. #192-3 at 3-5.)[8]  After Pretner sued Vasquez,

Progressive (Vasquez's personal insurer) did not defend Vasquez despite Vasquez's insistence

that he had defenses based on Pretner's potential negligence. (*Id.* at 3.)  Instead, Progressive

provided him an attorney only to advise him about signing the settlement agreement. (*Id.* at 5;

Dkt. #192-17.)  When confronted with the agreement, Vasquez did not want to sign it because he

maintained his position that he was not at work at the time of the accident and therefore Century

should not be liable. (Dkt. #192-3 at 5; Dkt. #192-21.)  He nevertheless agreed to take a default

on both his own and Blue Streak's behalf in exchange for a covenant not to execute.  A

reasonable jury could find that agreement set the stage for Pretner's counsel to obtain a default

judgment that manufactured coverage even though there was no evidence supporting coverage

under the Century policy.

Although there was a default judgment hearing before an independent judge in state court,

there is no evidence the judge was advised that both Century and Vasquez disputed whether

Vasquez was driving in the course and scope of employment at the time of the accident and that

this fact was important because it would trigger liability for a non-participating insurer.  No

evidence was presented to the judge showing Vasquez in fact was driving in the course and scope

of his employment at the time of the accident. (Dkt. #192-22.)  There also is no evidence the

---

[8] Pretner moves to strike Vasquez's declaration, arguing that Century cannot rely on after-acquired evidence to support its decision not to defend Blue Streak.  Pretner also argues Vasquez cannot submit an affidavit contradicting the facts recited in the default judgment against him.  I deny the motion to strike. The question of whether Century breached its duty to defend has been resolved against Century, and Century does not offer the Vasquez declaration on that issue.  As to whether Vasquez can offer testimony contradicting the default judgment's findings, nothing in the settlement agreement precludes him from providing an affidavit in litigation between other parties.  Indeed, if the settlement agreement required Vasquez to testify falsely about whether he was acting in the course and scope of his employment, that would weigh heavily in favor of finding fraud and collusion.  The default judgment is not Vasquez's sworn testimony on the subject, and he therefore is not contradicting his own prior sworn testimony. Vasquez's testimony is competent and probative on the remaining questions in this lawsuit.  Accordingly, I deny the motion to strike.

judge was told about the settlement agreement with the covenant not to execute. Although Century had notice of the lawsuit and the entry of default, there is no evidence Century knew Vasquez and Blue Streak had settled in exchange for a covenant not to execute. Nor is there evidence Century was notified of the application for default judgment or the date and time of the default judgment hearing. (Dkt. #73-2 at 230, 235 (certificates of service showing application for default judgment and date and time of hearing served only on Progressive attorney).) Viewing the totality of these circumstances in the light most favorable to Century, a reasonable jury could find the settlement agreement and resulting default judgment were the product of fraud or collusion designed to manufacture coverage where none existed under the Century policy.

On the other hand, viewing the facts in the light most favorable to Pretner, a reasonable jury could find that the settlement and resulting default judgment were not fraudulent or collusive. The complaint alleged the facts potentially triggering coverage under the Century policy before the parties entered into the settlement agreement. Although Vasquez denied he was acting in the course and scope of employment, he is a layperson who may not understand all of the factors that would inform the inquiry. Pretner advised Century of the lawsuit and of the default, and thus Century had the opportunity and the duty to litigate the issue. Instead, Century abandoned its insured.

A reasonable jury could find that Vasquez then did the only thing he could to avoid substantial liability for both Blue Streak and himself personally based on the catastrophic injuries Pretner suffered. *Samson*, 636 P.2d at 240-41 ("When the insurer exposes its policyholder to the sharp thrust of personal liability by breaching its obligations, the insured need not indulge in financial masochism.") (quotation omitted). Indeed, a reasonable jury may find it ironic that Century would expect Vasquez to forego a settlement and expose Blue Streak and himself to substantial liability in order to protect Century's interests when Century had breached its duty to defend Blue Streak as it was contractually required to do.

Moreover, Vasquez did not agree to testify falsely that he was driving in course and scope of employment, and the parties did not agree to any damages amount, much less an inflated

1   amount.  Instead, Vasquez and Blue Streak agreed to default, as they had already done anyway.

2   They also agreed that a state court judge would decide whether a default judgment was warranted

3   and, if so, in what amount.  A reasonable jury could conclude Century knew the complaint

4   alleged facts potentially triggering coverage and knew its insured had defaulted and thereby

5   admitted those facts.  Century therefore should have monitored the litigation and attended the

6   default judgment hearing if it wanted to contest Blue Streak's liability and the amount of that

7   liability.  Accordingly, a reasonable jury could conclude that "[a]ny resulting damage to

8   [Century] was caused not by [Vasquez's] supposed misconduct but by [Century's] own

9   intransigence." *Id.*

10         Material issues of fact remain regarding whether the settlement agreement and the default

11   judgment were the product of fraud or collusion.  That issue therefore must be presented to a

12   jury.[9]

13   **III.  CONCLUSION**

14         IT IS THEREFORE ORDERED that defendant Century Surety Company's motion for

15   summary judgment **(Dkt. #192) is DENIED**.

16         IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment **(Dkt. #194) is**

17   **DENIED**.

18         IT IS FURTHER ORDERED that plaintiffs' motion to strike **(Dkt. #197) is DENIED**.

19         IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial order as

20   required under the Local Rules.

21         DATED this 28th day of September, 2015.

22

23                         ANDREW P. GORDON

                          UNITED STATES DISTRICT JUDGE

24

25

26        [9] Century stated at the September 17, 2015 hearing that discovery should be re-opened on the issue
of fraud and collusion.  However, Century raised this defense from the outset and discovery proceeded for
27   over a year before I ruled Century was not bound by the default judgment.  Century therefore had ample
opportunity to investigate its fraud or collusion defense.
28